Carl F. GRUNENTHAL, Plaintiff,
v.
The LONG ISLAND RAIL ROAD COMPANY, Defendant and Third-Party Plaintiff,
v.
T. F. CONTRACTING CO., Inc., Third-Party Defendant.

No. 63 Civ. 3491.

United States District Court
S. D. New York.

April 10, 1967.

Supplemental Memorandum
June 1, 1967.

Milford J. Meyer, Philadelphia, Pa., for plaintiff; Irving Younger, New York City, N. Y., of counsel.

George M. Onken, Jamaica, N. Y., for defendant and third-party plaintiff; James T. Gallagher, Jamaica, N. Y., of counsel.

MacIntyre, Burke, Smith & Curry, New York, City, for third-party defendant; Thomas F. Cohalan, New York City, of counsel.

## MEMORANDUM

COOPER, District Judge.

This cause came on for trial February 21, 1967. By stipulation entered into by all the parties, the issue of liability was first submitted to the jury for determination. By agreement of defendants the claim over was reserved to the Court.

The jury on February 28, 1967 found against the Long Island Rail Road on liability and thereupon announced (by virtue of a similar stipulation) that the railroad was negligent; that proximate cause had been established; and that plaintiff was not contributorily negligent.

The second trial stage (damages) was heard by the same jury which on March 2, 1967 brought in a verdict in plaintiff's favor for $305,000.

Third parties plaintiff and defendant made separate motions (hereinafter dealt with) to set aside the verdict. Each motion is denied.

Plaintiff moves to amend the *ad damnum* clause from a demand of $250,000 to $305,000. Motion granted.

\* \* \*

The third party plaintiff and third party defendant separately move to set aside the verdict contending:

(1) It is contrary to the weight of the evidence. This motion was denied in open court (Tr. p. 444); in any case there is ample evidence to support a finding that Finley negligently failed to obey plaintiff's signal and that this was the proximate cause of the resultant injury to plaintiff.

■ (2) The court erred in failing to declare a mistrial when plaintiff talked to Finley in the hall outside the courtroom, and further erred in failing to charge the jury on the impropriety of this conduct. We believe our rulings correct on this matter and adhere to our views as expressed in the transcript at p. 349.

■ (3) The court erred in refusing to admit into evidence a prior consistent statement (3d party defendant's exhibit k) to bolster the testimony of the witness Finley. Here too, we are not inclined to alter our earlier ruling. (Tr. pp. 346–48).

■ (4) Third party defendant contends that the court erred in denying it the right to cross examine the witness Chindamo as to a signed statement of the witness (defendant's exhibit i for identification). We believe correct our ruling at trial (Tr. p. 224). The interests of both defendants with respect to the contents of the statement were identical. Therefore, third party defendant had no right to cross examine the witness on that score since there was no adverse interest.

\* \* \*

■ The defendants move to set aside the verdict as grossly excessive.

The cases on this subject naturally offer little assistance, for each contains some factor varying in degree or intensity from all the rest. Judge Weinfeld put his finger on it (Dagnello v. Long Island R. R. Co., D.C., 193 F.Supp. 552, 554, aff'd 289 F.2d 797 (2d Cir. 1961)):

"No useful purpose would be served in collating the various cases, except to emphasize the contrariety of individual views."

We were impressed with the attentiveness of the jury throughout the course of the trial, its outward show of exemplary deportment, the considerable time it devoted to deliberating on both the liability and damage phases of the trial, and so expressed ourselves in open Court before excusing the jury.

Clearly we have no way of knowing the jury's actual evaluation of the various items making up total damages. We can and must indulge, however, in a fairly accurate estimate of factors to which the jury gave attention, and favorable response, in order to arrive at the verdict announced.

We can appreciate the heavy weight given the total trial record by the jury in plaintiff's favor. Among other impressive phases of the trial were, (a) the candor evinced throughout by plaintiff, the total absence of exaggeration in his testimony especially when describing the excruciating physical pain and mental anguish he endured since the accident (September 19, 1962), his efforts to obtain employment if only to keep his mind off his incessant misery (he had been in the constant employ of the railroad for approximately twenty years and was forty-one at the time of the accident); (b) the unrebutted testimony of plaintiff's medical expert, his explanation of the highly significant entries appearing in the hospital records relating to intensive and extensive medical treatment (including a sympathectomy) undergone by plaintiff, the setting in of gangrene and the measures taken to check its advance, the impending operation to remove part of the foot and the consequent total loss of its use for the only type of work known to plaintiff, coupled with attendant pain of a "fragile" foot in the future —all this testimony was effectively direct and utterly convincing; (c) tantamount to no contest as to each item of damages was the total trial record adduced by plaintiff.

Wages lost for the period between the dates of accident and trial (5½ years) amounted to approximately $27,000.

With a life expectancy of approximately 27 years, plaintiff's future wages based on $6,000 per annum would conservatively amount to $150,000; discounted this would be about $100,000. However, convincing testimony not refuted was offered at trial by plaintiff demonstrating the steady wage increases in recent time for work equivalent to that

rendered by plaintiff, and the strong likelihood that similar increases would continue. It might very well follow, therefore, that the wage increases would offset the discount calculation.

\* \* \*

Thus the trial record here has many unusual features, the most outstanding one being the non-controversial nature of the defense as to damages. The jury, impressed by the uncontroverted proof adduced by plaintiff, may well have adopted in toto its full significance and drawn such normal and natural inferences therefrom as the law endorses.

We calculate the jury in its wisdom saw fit to allow an amount approaching $150,000. for plaintiff's pain and suffering—past and future. On the record here, it had good and sufficient reason to regard and assess it as excruciating, deep-seated, unrelenting and debilitating —the inducing cause of his constant misery. Reasonable and controlled reaction to pain and suffering varies with man's innate, sensitive response to the woes and laments of those stricken and bereaved—especially where clearly unearned or cruelly inflicted. Who is to say this jury was not so composed? If the jury believed such an award fair and proper, we find nothing untoward, inordinate, unreasonable or outrageous— nothing indicative of a runaway jury or one that lost its head—in its reflected resolution to so respond.

Concededly, at first blush the verdict appears excessive. However, a detailed analysis of the proof covering the items making up total damages in the light of this particular trial record, with resounding emphasis in plaintiff's favor all down the line, points to a jury that was generous—not generous to a fault or outside the bounds of legal appropriateness.

We are told, and properly so, that the jury's discretion in the assessment of damages in a case predicated on subject matter such as we deal with here is wide —not wild. Theirs is the responsibility. A judge must not interfere with the jury's verdict unless he conscientiously believes it excessive. Dagnello v. Long Island R. R. Co., supra; Dellaripa v. New York, New Haven & Hartford R. Co., 257 F.2d 733, 735 (2d Cir. 1958). Applying that criterion, we cannot in all good conscience say so.

Each motion addressed to the alleged excessiveness of the verdict is denied.

The jury's verdict remains undisturbed. There being no just reason for delay, let judgment be entered.

This shall be considered an order; settlement thereof is unnecessary.

## SUPPLEMENTAL MEMORANDUM

Plaintiff brought suit against the Long Island Railroad Co. (Railroad) under the Federal Employers' Liability Act, 45 U.S.C. sec. 51 et seq., for injuries received during employment. Plaintiff's case was entirely predicated upon the negligence of one Finley, the operator of a winch on a boom truck. The jury found for plaintiff.

The Railroad impleaded the third party defendant, T. F. Contracting Co. (Contractor), asserting that the latter, as the owner of the truck aforementioned and the general employer of its operator Finley, was primarily liable for the negligence of the operator.

By stipulation of the parties involved, the claim over was reserved to the Court. Subsequent to the entry of judgment in plaintiff's favor, the total trial record in the claim over was by stipulation to consist of the entire trial record in plaintiff's claim against the Railroad, plus an agreed statement of facts entered into on May 16, 1967.

[7] The issue on the claim over is whether the Railroad, the alleged special employer, or the Contractor, the general employer, is to bear the liability for Finley's negligence. This question is determined by New York law. See Ratigan v. New York Central R. R. Co., 291 F.2d 548 (2d Cir.), cert. denied, New York Cent. R. Co. v. Interstate Commodities, Inc., 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed.2d 89 (1961).

■ The applicable standard developed by the New York courts has been clearly enunciated:

"[T]he servant of one master to become, for the time being, the servant of another must pass out of the direction and control of the former into that of the latter * * *." "He is to be deemed the master who has the supreme choice, control and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work but in all its details."

"If the general employer's contract is to furnish an employee who will do the specified work under the supreme direction and control of the person for whom the work is to be done, the workman becomes for the time being the servant of the person to whom he is furnished." Irwin v. Klein, 271 N.Y. 477, 484, 485–486, 3 N.E.2d 601, 604. See also Stone v. Bigley Bros., Inc., 309 N.Y. 132, 127 N.E.2d 913 (1955).

Applying this standard to the facts of this case, we find that Finley was the *ad hoc* employee of the Railroad, which thus bears sole responsibility for his negligence.

Pursuant to a long standing agreement, the third party defendant provided the third party plaintiff with boom trucks and operators to perform the maintenance work of the Railroad. Finley had so worked with the Railroad's employees for about ten years—frequently with plaintiff, the foreman—generally performing the same tasks as on the day of plaintiff's accident. Although formally an employee of the Contractor, Finley performed Railroad work under constant Railroad supervision.

We find that the Railroad had control over all the details of Finley's work. Accordingly, Finley was the servant of the Railroad. See Wyllie v. Palmer, 137 N.Y. 248, 33 N.E. 381 (1893); Hartell v. T. H. Simonson & Son Co., 218 N.Y. 345, 113 N.E. 255 (1916); In Matter of Goodman v. Stone and Webster Engineering Corporation, 11 A.D.2d 558, 199 N.Y.S. 2d 770 (3rd Dept. 1960).

Our finding that the Railroad had total and complete control of Finley's activities is supported at every turn in the record. Examples: Upon reporting for work, Finley was assigned to a Railroad work gang under the supervision of a Railroad foreman (on the day of the accident Finley's foreman, as usual, was Grunenthal). Working as an integral member of the work gang, Finley received and responded to all orders from the Railroad foreman, who directed the details of the work to be done and the method to be followed. This working relationship existed at various points of operation throughout the day. Finley's hours of work coincided exactly with the time schedule of formal Railroad employees. Clearly, he performed no work "on his own"—his work contribution to the total operation was exclusively under the direct and immediate supervision of the Railroad.

Moreover, the work in which Finley participated was the usual, ordinary, day-to-day work of the Railroad's maintenance department. Finley neither contributed nor possessed any particular skill, as would be the usual case with an "independent contractor." Cf. Bird v. New York State Thruway Auth., 8 A.D. 2d 495, 188 N.Y.S.2d 788 (4th Dept. 1954). For all practical purposes, Finley was the employee of the Railroad, doing Railroad work under its supervision.

The Contractor was not hired by the Railroad to perform work for it as an independent contractor. Instead, the Contractor leased the Railroad a truck and operator. The operator became for such time the servant of the Railroad. See Van Deusen v. Ruhtz-Pike Engineering and Construction Corp., 238 A.D. 178, 264 N.Y.S. 395 (3d Dept. 1933), appeal dismissed, 262 N.Y. 639, 188 N.E. 100 (1933).

We do not find the cases relied upon by the Railroad as holding to the contrary. The totality of control present here distinguishes this case from the chaufferage cases, where the general employer was held liable. See e. g.,

818

Charles v. Barrett, 233 N.Y. 127, 135 N.E. 199 (1922). Nor is this a situation involving an independent contractor possessing a special skill and hired to do particular work upon the land of the special employer. See, e. g., Bartolomeo v. Charles Bennett Contracting Co., 245 N.Y. 66, 156 N.E. 98 (1927).

Finally, we reject the Railroad's offer of proof that the parties understood liability to rest with the Contractor. The letter of May 29, 1958 from the Railroad to the Contractor, offered by the Railroad, is inadmissible as irrelevant. It has no bearing on the acts of a borrowed servant. In any event, we would give it no weight as it does not deal specifically with the problem which confronts us for resolution.

For the reasons discussed above, we hold that the Railroad is solely liable for the negligence of Finley. Accordingly, the claim over fails in all respects.

This shall constitute findings of fact and conclusions of law.