**Bienvenido REYES, Plaintiff,**

**v.**

**GRACE LINE, INC., Defendant.**

**No. 67 Civ. 3410.**

United States District Court,
S. D. New York.

Oct. 5, 1971.

Di Costanzo, Klonsky & Cutrona, Brooklyn, N. Y., for plaintiff; Robert Klonsky, Brooklyn, N. Y., of counsel.

Kirlin, Campbell & Keating, New York City, for defendant; Robert P. Hart, New York City, of counsel.

## OPINION

COOPER, District Judge.

Plaintiff moves to set aside the jury's verdict in defendant's favor rendered June 21, 1971[1] in his action for damages allegedly sustained as a result of a fall from the gangway of defendant's vessel SS SANTA ROSA on August 20,

1967. We are asked to render judgment notwithstanding the verdict or grant a new trial pursuant to Rules 50(b), (c), and 59 of the Federal Rules of Civil Procedure.

■ Interference with a jury's verdict calls for, and must be attended with, the exercise of extreme caution.[2] We are constrained here to grant the motion for a new trial.

There is no contest with respect to extremely vital factual points (among others): that plaintiff was upon and precipitated from the gangway onto the concrete flooring below; that he sustained personal injuries directly resulting from this accident; that plaintiff's fall was exclusively the result of a sudden and violent movement of the gangway caused by an event of frequent occurrence—the lifting from the dock end of the gangway (more often the complete removal of the gangway) in order to accommodate a passing loaded flat car which ran on the pier tracks.

■ The crucial point before us, as both sides concede, is whether plaintiff in disregard of defendant's claimed warning went upon the gangway and thus placed himself in a position of peril. During the course of the trial, this issue was plainly and emphatically put before the jury by the parties; on its proper resolution rested justice in the case. Evidently the jury's determination of that crucial point was in defendant's favor. We believe it erred grievously thereby.

Putting aside plaintiff's testimony and supporting evidence that no warning was given, our examination of those portions of the total trial record which defendant asserts conclusively damage plaintiff's position before us and foreclose relief to him, fails to disclose that the warning, if in fact given, was either timely or adequate. Thus, defendant's "Report of Personal Injury or Loss of

---

1. Receipt of post trial papers was completed August 31, 1971.

2. In the course of the past ten years, the number of similar applications before us has been considerable; we recall granting one only.

Life" to the United States Coast Guard, dated August 24, 1967 (Plaintiff's Exhibit 8), signed by the Master, reveals under the item "description of casualty" furnished by one Rebic,

> "While leaving the ship at hrs. 1505, C Deck Gangway, forward, port side, we were walking down the gangway, but while halfway down, the Quartermaster called "Watch Out" and a train coming very fast hit the gangway. The patient who was walking ahead of me, made a somersault forward and fell over the side of the gangway, onto the pier."

Rebic's ex parte statement (Exhibit 10) includes,

> "Q Do you recall hearing any warning?
>
> A Yes.
>
> Q Who gave the warning?
>
> A The quartermaster.
>
> Q Do you recall what he said?
>
> A Yes. He said, "You are not supposed to be on the gangway now," and then he yelled "Watch out." That was it. It started to shake.
>
> Q Where were you at that time?
>
> A Halfway down.
>
> Q Do you recall whether there were any ship's personnel acting as gangway watchmen?
>
> A Yes, an AB seaman and a quartermaster."
>
> Plaintiff's Exhibit 10, p. 29, lines 10–22.

Defendant also points to the out-of-court statements of Gomes, the Quartermaster and Mottola, an able seaman, both on gangway watch. Gomes there stated:

> "The foot of the gangway was picked up too hurriedly. When I saw that, I looked around to see if anyone was coming to warn them. As I looked

around, these two men passed by in a rush, hurriedly, and passed me, and I called out to them. I gave them a warning to stop, two warnings."

> Q Do you recall what you said to them?
>
> A I said, "Wait. Wait." And the company's watchman along with the other watchman made a gesture with their hand and told them to stop.
>
> Plaintiff's Exhibit 10, p. 4, lines 16–24.

Mottola's out-of-court statement includes:

> "Q Do you recall whether the man who fell off the gangway was warned by anyone?
>
> A My partner, he told them to come back. As they were walking down, he told them to come back and they were warned by the shoreside people to stop.
>
> * * * * * *
>
> Q Do you recall what warnings were given to these men?
>
> A The quartermaster told them to stop. I can't recollect too much from the shoreside people but I can recollect that the quartermaster told them to stop and come back. It happened so fast."
>
> Plaintiff' Exhibit 10, pp. 10–11, lines 17–21, 7–12.

Whatever the total trial record, and the reasonable inferences to be drawn therefrom, has to say as to the warning[3] points in one direction—it was given after plaintiff was part way down the gangway and concededly at a time entirely too late to afford him an opportunity to retreat.

The passing of flat cars on the pier tracks was not an unusual event. Surely on the occasion with which we are concerned the warning was not only untime-

---

3. Defendant's trial memorandum (p. 3) stated: "Gomes, the gangway watchman, said 'The foot of the gangway was picked up too hurriedly. When I saw that I looked around, these two men passed by in a rush, hurriedly, and I called out to them. I gave them a warning to stop, two warnings.' At this point the shore personnel dropped the gangway which came into contact with the flatcar causing it to tilt and the plaintiff to fall over the side to the dock below."

ly but inadequate, for there was no barrier (human or inanimate) to avoid mishaps most likely to occur. Then, too, the entire event was of extremely short duration; from start to finish it was hurried and precipitous. Insufficient time was allowed plaintiff to reasonably respond.

We regard it "quite clear that the jury has reached a seriously erroneous result." Creagh v. United Fruit Company, 178 F.Supp. 301, 307 (S.D.N.Y. 1959).

 While we are positive of our position in respect of the warning, we are nevertheless disinclined to grant the motion for judgment notwithstanding the verdict. A new trial would allow both sides the opportunity to expand upon, vis-a-vis direct and cross-examination, the major portion of the ex parte statements, admitted into evidence on consent at the first trial, which contain extremely vital material on the warning issue.

Over and above the matter already dealt with herein, the entire trial record justifies a new trial. We were taken aback (our judicial conscience jarred) when the verdict was announced. It appeared to us then, and further extensive examination and reflection supports our initial reaction, that the verdict on the issue of liability disregarded the complete factual picture presented. It has made us uneasy; we cannot get rid of the firm and unalterable conviction that the doing of justice makes a new trial imperative. Indeed, applicable to us is the pronouncement in Cone v. West Virginia Pulp and Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849 (1946):

> And he can exercise this discretion with a fresh personal knowledge of the issues involved, the kind of evidence given, and the impression made by witnesses. His appraisal of the bona fides of the claims asserted by the litigants is of great value in reaching a conclusion as to whether a new trial should be granted. Determination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart.

> * * * there are circumstances which might leave the trial court to believe that a new trial rather than a final termination of the trial stage of the controversy would better serve the ends of justice. 330 U.S. 212, 216, 215, 67 S.Ct. 752, 755.

The proper exercise of discretion compels us to relieve plaintiff of the jury's verdict.[4] Accordingly, the jury's verdict rendered herein on June 21, 1971 is set aside and the action referred to our calendar clerk with instructions to set the case down for a new trial.

So ordered.

---

4. Cf. Gruenthal v. Long Island RR, 292 F.Supp. 813 (S.D.N.Y.1967), modified, 388 F.2d 480 (2d Cir.), district court affirmed, 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968); Oliveras v. American Export Isbrandtsen Lines, Inc., 431 F.2d 814 (2d Cir. 1970); Sprague v. The Texas Company, 250 F.2d 123 (2d Cir. 1957); Centrowitz v. Texaco, Inc., 49 F.R.D. 142 (S.D.N.Y.1969).