William RIVERA, Appellant,

v.

FARRELL LINES, INC., Appellee.

No. 346, Docket 72-1202.

United States Court of Appeals, Second Circuit.

Argued Jan. 17, 1973.

Decided Feb. 15, 1973.

Charles Sovel, New York City (Abraham E. Freedman, New York City, on the brief), for appellant.

Robert A. Lilly, New York City (Lilly, Sullivan & Purcell and Steven L. Barkan, New York City, of counsel), for appellee.

Before FRIENDLY, Chief Judge, and OAKES and TIMBERS, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from an order of the district court denying appellant's post-trial motion for a new trial on the issue of damages or, in the alternative, on all issues. We agree that it was error for the district court to deny the motion and we reverse and remand for a new trial on all issues.

Appellant was employed as a mess man on the S.S. *African Sun,* an American flag merchant ship owned and operated by appellee. His duties included serving meals to the vessel's crew. This work often took him to the crew pantry, which was located on the main deck between the crew mess hall and the ship's main galley and in which desserts and other items needed during the course of a meal were stored.

From at least one previous voyage on the *African Sun* appellant was aware of an ever present difficulty working in the crew pantry. An inch or so of soapy water would back up from the floor drains, making the floor wet and slippery. The back-up resulted from water draining from the officers' pantry directly overhead and then filling the drains in the pantry below. The condition had often been reported to the ship's officers but had gone uncorrected.

During the evening meal of September 9, 1969, one of the crew members asked for ice cream for dessert, and appellant went to the pantry to fetch it. As he returned to the mess hall he slipped and fell on the wet pantry floor. The fall resulted in injury to his back.

Appellant brought suit under the Jones Act, 46 U.S.C. § 688, to recover for his injury. The defense was that appellant was injured as a result of his own contributory negligence, principally consisting of his continued work in the pantry despite his being well aware of the dangerous condition of the floor. To appellant's counsel this defense, although named contributory negligence, sounded suspiciously like the defense of assumption of risk, long eliminated from

maritime injury law by statute.[1] At the conclusion of the evidence he therefore moved to strike the defense but his motion was denied.

The court then submitted the case to the jury which returned a general verdict and answered four special interrogatories. The interrogatories revealed that the jury found that an unseaworthy condition existed in the ship's pantry; that appellee was negligent on the day of the accident; that the unseaworthiness and negligence played a part in bringing about appellant's injury; and, most important for present purposes, that appellant was contributorily negligent. Under the applicable comparative negligence doctrine, see 35 Stat. 66 (1908), 45 U.S.C. § 53 (1946), incorporated by reference in 41 Stat. 1007 (1920), 46 U.S.C. § 688 (1946), the finding of contributory negligence went to reduce appellant's recovery. Since no specific finding was made as to the total amount of damages that would have been awarded appellant absent any contributory negligence on his part, it is impossible to know how much appellant's general verdict of $15,000 was affected by the finding.

Following the verdict, appellant moved for a new trial on the ground that there was no evidence of contributory negligence and the issue was thus improperly submitted to the jury. This appeal followed the denial of that motion.

The distinction between assumption of risk and contributory negligence is well established. In common law days the knowledgeable acceptance by an employee of a dangerous condition when and if such acceptance was necessary for the performance of his duties was assumption of risk. 2 F. Harper & F. James, The Law of Torts, § 21.4 (1956). Contributory negligence, on the other hand, connotes some careless act or omission on the part of the employee over and above that knowledgeable acceptance. Mumma v. Reading Co., 247 F.Supp. 252, 256–257 (E.D.Pa.1965).[2] As the defense of assumption of risk has been abolished by statute—indeed, "every vestige" of the doctrine "obliterated," Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54, 58, 63 S.Ct. 444, 87 L.Ed. 610. (1943)—the first issue before us is whether the charge permitted assumption of risk to go to the jury in the guise of contributory negligence.

The only theory of contributory negligence the record reveals that was both argued by appellee's counsel in summation[3] and charged to the jury by the court[4] was the argument that appellant was careless in moving in and about the pantry, knowing the sloppy condition of the floors. This theory, however, was really assumption of risk masquerading under another name, because it allowed a finding of contributory negligence on the strength of appellant's knowledge

---

1. 35 Stat. 66 (1908), 45 U.S.C. § 54 (1946) (railroad employees), as amended 53 Stat. 1404 (1939), 45 U.S.C. § 54 (1946), made applicable to seamen by 41 Stat. 1007 (1920), 46 U.S.C. § 688 (1946); cf. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939); Carter v. Schooner Pilgrim, Inc., 238 F.2d 702, 705 (1st Cir. 1956). In The Arizona v. Anelich, 298 U.S. 110, 122, 56 S.Ct. 707, 80 L.Ed. 1075 (1936), the Court pointed out that assumption of risk had not been a defense in maritime law even prior to the Jones Act. See G. Gilmore & C. Black, The Law of Admiralty 299 (1957).

2. Although *Mumma* arose under the Federal Employers' Liability Act, the provisions of the FELA abolishing defenses formerly available to employers are applicable to seamen by virtue of the Jones Act. See generally G. Gilmore & C. Black, supra note 1, at 296–98. Thus, *Mumma's* distinction between contributory negligence and assumption of risk is applicable to this case.

3. "If he *knew* the conditions which he claimed two inches of water, an inch and a half of water on the deck, *did he take extra care?*" (Emphasis supplied.)

4. The court charged that if the jury accepted the appellee's contentions the appellant "was guilty of carelessness in persisting in moving in and out of this pantry without more caution as to where he walked and how he walked and how he handled himself."

that a dangerous condition in his line of duty existed and his working in that line of duty. Evidence of an act of negligence other than appellant's knowledge of the dangerous condition in the pantry was not, though it should have been, required by the court's charge in this case. DuBose v. Matson Navigation Co., 403 F.2d 875, 878 (9th Cir. 1968); Smith v. United States, 336 F.2d 165, 168 (4th Cir. 1964); Mumma v. Reading Co., supra. See also Restatement (Second) of Torts § 496A, comments d and e at 562–65 (1965). Thus the verdict must be set aside since the finding of contributory negligence may well have been based on this error in the charge.

■ The court also charged the jury that appellant might have been contributorily negligent by not having "the common sense to go and say to somebody in charge, 'Look, this has got to be cleaned up; I won't work there until it is done.'" There have been holdings that failure to warn a superior officer of a dangerous condition can constitute contributory negligence on the part of a seaman and diminish his recovery for injuries suffered. Mroz v. Dravo Corp., 429 F.2d 1156, 1164 (3rd Cir. 1970); DuBose v. Matson Navigation Co., supra, 403 F.2d at 879. But those cases involved conditions which almost imperceptibly and over a long period of time led to an illness suffered by a single seaman. The danger they presented was not immediately obvious to superiors. See Mroz v. Dravo Corp., supra, 429 F.2d at 1164 (gas and smoke gradually leading to breathing defects); DuBose v. Matson Navigation Co., supra, 403 F.2d at 876–877 (light bumps on leg from kitchen workers leading to a cyst). Here, the danger from the wet and sloppy floor was open and obvious to anyone—including officers—who cared to look. Furthermore, unrebutted evidence presented at trial established that prior to the accident numerous complaints about the situation in the pantry had been made to no avail—though not necessarily by appellant. See Mumma v. Reading Co., supra, 247 F.Supp. at 254. It cannot be

known whether further complaint by appellant would have resulted in correction of the drain defect in time to avoid the accident or might on the other hand have provoked retributive treatment from his superior officers. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 430, 59 S.Ct. 262, 83 L.Ed. 265 (1939). If this theory of contributory negligence is submitted to the jury on retrial at all, it should be done so only with a caveat that the appellant was not duty bound to perform a futile act.

■ A third theory of contributory negligence was that appellant should have mopped up the wet pantry floor before crossing it. This theory was, however, neither argued by appellee in summation nor specifically mentioned in the court's charge. There was evidence that appellant or another seaman cleaned up the pantry floor. But there was also unrebutted evidence that even after the pantry floor was mopped the back-up from the defective drain would simply recreate slippery ooze. Appellee, who had the burden of establishing appellant's contributory negligence, made no showing that the floor in fact had not been mopped by appellant on the day of the accident or that the wet, sloppy condition would not quickly reoccur after it was cleaned up. It is our view that there was not enough evidence on this theory of contributory negligence to create a jury question.

■ The final theory of contributory negligence urged by appellee to support the jury's verdict is that appellant unreasonably went to the pantry to get the requested ice cream when he could have gone around the pantry and to the galley and thereby avoided the accident. To support this, there was evidence that ice cream was stored in the galley as well as the pantry. But this alternate route theory, while relied on by the trial judge in denying appellant's post-trial motion, was not argued by the appellee in summation nor specifically charged to the jury. Had appellant been given some notice of this theory, he points out, he would have presented evidence showing

that mess men were not allowed to go into the galley during meals for fear that they would interfere with the work of the cooks and that this is the very reason desserts were stored in the pantry. He might also have shown how difficult this would have been in connection with the performance of his work under the circumstances. To allow a finding of contributory negligence on the basis of evidence which was at best incomplete and on a theory of which there was no real notice to the appellant could substantially prejudice him. On remand, doubtless the evidence of both sides of this issue will be fully presented.

■ A question remains, however, whether the new trial should cover all issues or be limited to the issues of contributory negligence and damages. Fed.R.Civ.P. 59(a) permits a remand for a partial new trial. *Cf.* Mason v. Mathiasen Tanker Industries, Inc., 298 F.2d 28, 32–33 (4th Cir.), cert. denied, 371 U.S. 828, 83 S.Ct. 23, 9 L.Ed.2d 66 (1962). Since we are left in the dark as to what the total award would have been absent the finding of contributory negligence and the extent to which that finding affected the verdict, as well as to whether there will be such a finding on

a proper charge, we remand for a new trial on all issues. Caskey v. Village of Wayland, 375 F.2d 1004, 1009–1010 (2d Cir. 1967); 3 W. Barron & A. Holtzoff, Federal Practice and Procedure § 1307 at 386 (Wright ed. 1958).[5]

Reversed and remanded for a new trial on all issues.

5. Special interrogatories that—properly explained—would eliminate some of the confusion for a reviewing court or the trial court determining post-trial motions might include:
1. Do you find that plaintiff has established his claim that the defendant was negligent and that its negligence was a proximate cause of plaintiff's accident? (Answer yes or no.) .......
2. Do you find that plaintiff has established his claim that the ship African Sun was in an unseaworthy condition and this unseaworthiness was a proximate cause of plaintiff's accident? (Answer yes or no.) .......
3. If the answer to either Question 1 or 2 above is "yes," what is the *total* amount of damages to plaintiff? Answer in dollars and cents. $.......
4. If the answer to both Questions 1 and 2 is "no," your verdict is for the defendant, and you should put an "X" here, and you need not answer any further questions. ........

5. In the event you have found above that the plaintiff is entitled to recover, do you find that the defendant has established its claim that plaintiff was himself negligent and that negligence was a proximate cause of the accident. (Answer yes or no.) .......
6. If the answer to Question 5 is "yes," what percentage did plaintiff's fault so contribute? ........ (If the answer to question 5 is "no," do not answer this question. If you entered a percentage on this question, fill in its equivalent dollar amount here: $.........)
7. Subtract the dollar amount stated in Question 6 from the total amount of damages stated in Question 3 and enter here the difference, which will be the net amount of damages you find plaintiff is entitled to recover.

Question 3 total    $.......
—Question 6 amount $.......
Net recovery        $.......