**Rudesindo GUERRERO, Plaintiff,**

v.

**AMERICAN PRESIDENT LINES, LTD., Defendant.**

**No. 71 Civ. 2242.**

United States District Court, S. D. New York.

May 9, 1975.

Di Costanzo, Klonsky & Cutrona, Brooklyn, N. Y., for plaintiff; Robert Klonsky, Brooklyn, N. Y., of counsel.

Fogarty, McLaughlin & Semel, New York City, for defendant; James D. Hockett, New York City, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Defendant American President Lines, Inc. ("American") moves for an order granting it judgment notwithstanding the verdict or, in the alternative, a new trial, pursuant to Rules 50 and 59, Fed. R.Civ.P.

Plaintiff Guerrero brought this action to recover damages for personal injuries sustained on August 30, 1970 while loading cargo for a stevedoring company aboard defendant's vessel, the SS PRESIDENT HARDING. Guerrero, in carrying out his work assignment, was injured on that day when he slipped on grease aboard the vessel. In so slipping, Guerrero came into the path of cargo hooks which were swinging back to the dock. A cargo hook hit him on the back of the neck and head and rendered him unconscious.

We presided over the jury trial which determined the issues herein; it lasted from January 15 to January 20, 1975. The jury found unanimously in Guerrero's favor in the amount of $200,000. In answers to special interrogatories submitted by the Court, the jury found American negligent, its vessel unseaworthy, and Guerrero not contributorily negligent.

In its present motion American raises four claims of error. First, American contends that Guerrero failed to sustain his burden of proof on the issues of American's negligence or the unseaworthiness of the vessel. Second, Guer-

rero was contributorily negligent. Third, it was prejudiced by the Court's charge. Fourth, the jury's verdict was excessive. For the reasons that follow we reject American's contentions and accordingly deny its motion.

## I

■■ As to American's first claim of error: Where the motion is to grant judgment n. o. v. or to set aside a verdict which the jury has returned

[t]he evidence must be viewed in the light most favorable to the party other than the movant. The motion will be granted only if (1) there is a complete absence of probative evidence to support a verdict for the non-movant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that reasonable and fair minded men in the exercise of impartial judgment could not arrive at a verdict against him. Bernardini v. Rederi A/B Saturnus, 512 F.2d 660 at 662 (2d Cir., 1975); Armstrong v. Commerce Tankers Corp., 423 F.2d 957, 959 (2d Cir. 1970).

Applying that test here, we reject American's first claim. Guerrero produced ample evidence of solid character to sustain the jury's verdict on the issues of negligence and unseaworthiness. To prove negligence on the part of American, Guerrero had to show that an unsafe condition existed aboard the HARDING and that American had notice of it. Rice v. Atlantic Gulf & Pacific Co., 484 F.2d 1318 (2d Cir. 1973). Both requirements were fully met. The deck was proven to be unsafe. Plaintiff testified both on direct and cross examination that there were accumulations of grease in different places on the deck, "in all areas from which the winch ran over the deck to the railing." (Guerrero Aff., p. 2) Further, American had notice of the unsafe condition: the constant application of grease on the winches by a crew member for hours on end, the presence of a full complement of ship's personnel immediately forward of

the site of the greasy condition, and "other factors of an unsafe place to work such as the absence of a place of sanctuary while the swaying four legs and hooks of the bridle were taken in by the burton winch to dockside" (Guerrero Aff., p. 3)—all combined to give American notice of the unsafe condition aboard.

We hold also that Guerrero proved that the vessel was unseaworthy. Unseaworthiness exists when oil or grease on deck creates such a condition of slipperiness that the deck is no longer reasonably fit for its intended use. *Rice, supra* at 1321. In the instant case, there was substantial testimony describing how the incessant winch operation caused deposits of grease to form on many areas of the deck, creating a plainly unseaworthy condition. Keeping in mind the liberal attitude evinced by courts toward unseaworthiness claims, see Waldron v. Moore-McCormack Lines, 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967), Avena v. Clauss & Co., 504 F.2d 469, 472 (2d Cir. 1974) (dictum), coupled with the jury's specific finding of unseaworthiness, surely we cannot say, as a matter of law, that the unseaworthiness claim was not well established. Accordingly, American's first argument is rejected.

## II

American's second claim is that Guerrero was contributorily negligent as a matter of law since he continued to work without either cleaning up or reporting the unseaworthy condition to a superior officer. See, Santomarco v. United States, 277 F.2d 255 (2d Cir. 1960). Failure to warn a superior officer of a dangerous condition can constitute contributory negligence where conditions almost imperceptibly and over a long period of time lead to an illness suffered by a seaman and where the danger presented was not immediately obvious to superiors. Rivera v. Farrell Lines, Inc., 474 F.2d 255, 258 (2d Cir.

1973), citing Mroz v. Dravo Corp., 429 F.2d 1156 (3d Cir. 1970); DuBose v. Matson Navigation Co., 403 F.2d 875 (9th Cir. 1968). Here, in sharp contrast to *Mroz* and *DuBose,* the danger of the accumulated grease was "open and obvious to anyone . . . who cared to look." *Rivera, supra* 474 F.2d at 258. Further, Guerrero was not required to warn his superiors of the accumulated grease where to do so would be a futile gesture. *Id.* The Court's instructions to the jury on the issue of contributory negligence incorporated the essence of *Rivera*:

If you find that plaintiff knowingly accepted the risk of a dangerously slippery deck but that such acceptance was necessary for the performance of his duties, then plaintiff was not contributorily negligent. However, if you find that it was reasonable under the circumstances for plaintiff to warn his superior officers of the dangerous condition, and that he failed to do so, such failure may constitute contributory negligence.

On the other hand, plaintiff was not duty bound to perform a futile act, and if you find that the conditions on the vessel presented an open danger to anyone who cared to look, then he was not obligated to report such an obvious condition.[1]

Equally without substance is American's assertion that Guerrero was contributorily negligent for failing to mop up the deck. American, which had the burden on the issue of contributory negligence, made no showing that the "wet, sloppy [, greasy] condition would not quickly reoccur after it was cleaned up." *Rivera* 474 F.2d at 258. Moreover, American failed either to contradict Guerrero's version of the accident or to demonstrate convincingly that Guerrero was contributorily negligent. Particularly in light of the jury's explicit finding of an absence of contributory negligence, we certainly cannot say as

1. Official trial record of Jan. 20, 1975, at p. 39.

a matter of law that American proved contributory negligence. Accordingly, the second part of American's motion is denied.

## III

■■ American also urges that the Court's charge was improper and incorrect in certain respects. Here, no objection was made at the time of trial. In the absence of a properly specific objection made before the jury retires, a party cannot ordinarily claim error in the giving of an erroneous instruction or the failure to give a requested instruction. Wright & Miller, Federal Practice and Procedure: Civil § 2553; Kane v. American Tankers Corp., 219 F.2d 637 (2d Cir. 1955). Consequently we could reject American's contention on this procedural basis. Nevertheless, we have considered the belated objections to the Court's charge and find them devoid of substance; had they been recorded at the proper time, our rulings would have been to the same effect. Two examples will suffice. American complains that it was error for the Court to charge that a condition which persists for even a few minutes can ripen into unseaworthiness. This contention is without merit. Mitchell v. Trawler Lines, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). We used this in the charge for comparative purposes only, for the record positively revealed that the condition persisted for hours without interruption.

Defendant next complains that our instructions regarding contributory negligence were incorrect. However, the record reflects that instructions given the jury on contributory negligence, set out in part above, are in full accord with the applicable law. As to the remaining objections, their value is so slight as not to warrant discussion. Accordingly, American's third claim is rejected in its entirety.

## IV

■■ As we view it, American's most serious assertion is that the jury's verdict was excessive. A jury's verdict as to damages will be set aside only where it is so unreasonably high that it would be unconscionable to permit it to stand. Dagnello v. L. I. R. Co., 289 F.2d 797 (2d Cir. 1961). In light of plaintiff's youth at the time of the accident, the progressive nature of his serious disability, the medical proof introduced on his behalf, and the effective presentation made by his trial counsel, the jury's verdict should not be disturbed because it is not unreasonably high. Nonetheless, to sustain our conclusion, we set out below a detailed appraisal of the evidence bearing on plaintiff's damages.

In important respects the quality of this plaintiff's evidence is markedly similar to our reaction in Grunenthal v. L. I. R. Co., 292 F.Supp. 813 (S.D.N.Y. 1967), aff'd, 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968). Guerrero's deportment on the witness stand was most impressive; he spoke with sincerity; there was a total absence of exaggeration; he gave the impression of a straightforward, upright individual. We entertain little doubt that the jury's reaction was the same.

■■ Plaintiff was 25 years old at the time of the accident. His counsel, in summation, offered an example as to what factors the jury was to consider in determining a verdict on general damages. The attorney chose to use $1,000 per year as lost earnings for the work expectancy of 40 years, and $2,000 per year for 45 years for past, present and future pain and suffering. Counsel are permitted to express their opinion as to general damages. Rush v. Cargo Ships & Tankers, Inc., 360 F.2d 766 (2d Cir. 1966), particularly where no objections to the opinions were expressed by American's counsel. See Mileski v. L. I. R. Co., 499 F.2d 1169 (2d Cir. 1974). Most assuredly, the jury was permitted to take into their consideration Guerrero's long years of lost wages, pain and suffering.

■■ It is to be emphasized (and it is to be deplored) that this young man

who has a life expectancy of 45 years, has already sustained a 55% loss of hearing, which in all likelihood will develop into total loss; he has a total loss of taste and smell which will continue for the rest of his days. The impact of these factors on the jury, especially the inevitable loss of vital senses, would be powerful, for they are elements which intelligent jurors would view with shock.

In many ways plaintiff's injuries are far more serious than cases involving, for example, broken bones following an accident; frequently they heal. Our senses of taste, smell and hearing are irreplaceable. Without them we are daily cut off from the simple joys around us. Never to be able to hear a flute play, smell a flower or taste an orange are frightening losses. The jury clearly believed that this awful deprivation is what plaintiff faces.

On the question of pain and suffering, Guerrero produced impressively convincing medical proof regarding the permanency and debilitating effects of his injuries. A report written by Dr. Stanley Diamond regarding Guerrero's medical condition was read into evidence; it made the following significant conclusions: hearing loss with episodic high pitched buzzing tinnitus occurring two times a day; inability to taste salt or sweet; headaches; difficulty in focussing ("eyes don't stay steady").

Dr. Diamond's neurological examination of Guerrero made the following findings:

Patient was anxious, perspiring and tremulous. He appeared completely ingenuous in responding to questions. . . . There was bilateral hearing loss to whispered voice, and both low and high pitched stimulation and no lateralizations on the Weber's Test. Taste was impaired for saline solutions and patient could not identify common odors.

Dr. Diamond's medical impression of Guerrero concludes:

Patient has bilateral senson-neural hearing loss which appears to be pro-gressive along with anosmia [loss of smell] or dysgenesia [an abnormality of the sense of taste where all things taste alike], all related with a high degree of probability to the head injury with loss of consciousness.

Dr. Diamond's report was buttressed by the testimony of Dr. Sidney Feuerstein, a specialist in laryngology, who first examined plaintiff on March 1, 1971 when he noted a 35% hearing loss in Guerrero's left ear. In January 1974 Dr. Feuerstein reported a 50% hearing loss in both ears. On January 13, 1975 Dr. Feuerstein noted a 55% hearing loss in both ears which in all likelihood will eventually become a total loss. In addition Dr. Feuerstein testified that Guerrero sustained a permanent loss of smell and taste, and that his condition will worsen.

In addition, the medical testimony adduced by plaintiff was bolstered by the hospital reports introduced in evidence. The hospital notes revealed the following information: at the St. James Hospital where plaintiff was a patient from August 30 to September 9, 1970 the final diagnosis was "concussion and edema of the brain, cervical muscle strain, abrasion of the scalp." The nurses' notes for August 30, state "Vomited . . . complaining of head pain." The entries for August 31, included the following: " . . . pulse is irregular and low." Also on the same day, at a later hour, patient complained of severe headaches, "some bleeding noted from the back of the head." On September 1, 1970 there was noted "complains of blurred vision and pain all over head"; and on September 2, "complains of blurred vision, ringing in the ears and headache." On September 2, 1970 his complaints were of clogged sensation in the ear. "S 1 Vertigo at times." On September 4, 1970, "unable to get out of bed because of dizziness. Headaches." (See Guerrero Aff., p. 6)

In all likelihood the jury rejected the testimony of the doctors called by the defense. Their testimony was "full of

holes." For example, Dr. Ralph Peimer who specializes in otolaryngology testified about an examination of the plaintiff on January 13, 1975 at the Beth Israel Medical Center. He neither performed the audiological tests nor wrote the report, but we permitted him to testify, on a waiver of objection by Guerrero's trial counsel. Dr. Peimer testified that the pure tones showed a neurosensory hearing loss on both sides, 40 decibels to 50 decibels, nerve type in origin. By the use of certain mechanical devices not universally accepted by the medical profession, he did find a hearing loss in the left ear. It is extremely significant that American's other medical expert, Dr. Berney, took exception to Dr. Peimer's contention that the use of only one frequency of 1000 Az was insufficient for a proper conclusion; that there should have been higher frequencies used. Additionally, Dr. Berney testified that the second cranial nerve involved the sense of smell, changing on cross-examination to confess to a "typographical" error not to have stated that the *first* cranial nerve involved the olfactory sense. We agree with Guerrero that "Dr. Berney's testimony in the main was incredible." (Guerrero Aff., p. 7) We are constrained to and do reject American's medical testimony in its entirety.

We are of the opinion that the jury was influenced by Guerrero's proof at trial and in its wisdom saw fit to award fitting damages for plaintiff's loss of hearing, smell and taste.

On the record here, it had good and sufficient reason to regard and assess [Guerrero's pain and suffering] as excruciating, deep-seated, unrelenting and debilitating—the inducing cause of his constant misery. Reasonable and controlled reaction to pain and suffering varies with man's innate, sensitive response to the woes and laments of those stricken and bereaved —especially where clearly unearned or cruelly inflicted. Who is to say this jury was not so composed? If the jury believed such an award fair and proper, we find nothing untoward, inordinate, unreasonable or outrageous —nothing indicative of a runaway jury or one that lost its head—in its reflected resolution to so respond. *Grunenthal, supra,* 292 F.Supp. at 816.

It is reasonable to infer that the jury, "impressed by the [virtually] uncontroverted proof adduced" by Guerrero, and fully cognizant of his losses and its attendant pain and suffering, also his loss of past and future earnings, "adopted in toto its full significance and [drew] such normal and natural inferences therefrom as the law endorses." *Grunenthal v. L. I. R. Co.,* 393 U.S. at 158–59, 89 S.Ct. at 333, citing 292 F.Supp. at 816.

## V

As to the jury itself: we were comforted and assured by their unusual qualifications to serve. The foreman was a geophysicist and a graduate student at Columbia University. The second juror was a dental assistant. The third was a receptionist for the St. Luke's Hospital. The fourth was an assistant to a producer of industrial shows, the widow of the former head of CBS news. The fifth was a mechanic employed by the U. S. Post Office. The sixth worked for IBM as a biologist and also as a teacher at a community college. (See Guerrero Aff., pp. 3–4) Their personal achievements in life were of a high order and their behavior throughout the trial demonstrated a keen concern with what was going on, and seemed to convey the impression that they would fulfill their mission with distinction. We have no hesitancy in saying that there are "solid" juries and "poor" juries—just as there are relative judicial strengths and weaknesses in the

various fields of law to which Judges address their efforts.

In addition, Guerrero's claim was convincingly presented. Eschewing oratorical and dramatic appeal, plaintiff's trial counsel, with utter sincerity and total conviction, drew from the total trial record the last shred of evidence and apparently succeeded in persuading the members of the jury to accept in full his interpretation and evaluation of the proof adduced together with the natural, normal inferences to be drawn therefrom; from start to finish, he pleaded his client's cause (not "just another case") in a light most favorable to the plaintiff.

## VI

On the merits, we are constrained to and do find the jury's award justified by the total trial record and the law applicable thereto, *compare*, DeMauro v. Central Gulf S. S. Corp., 514 F.2d 403 (2d Cir. 1975); that it was not unreasonably high in view of the totality of the disclosure convincingly presented. American advances a phalanx of decisions, urging that the verdict is out of line with past jury awards. We reject them:

> It is stating the obvious that judgments as to compensation for pain and suffering and the loss of members vary, not only among jurors, but among courts. No useful purpose would be served in collating the various cases, except to emphasize the contrariety of individual views.

Dagnello v. L. I. R. Co., 193 F.Supp. 552, 554 (S.D.N.Y.1961) (Weinfeld, J.)

We cannot say that this award is so grossly excessive that it would be a denial of justice to permit it to stand. *Mileski, supra* 499 F.2d at 1173. Accordingly, American's motion to set aside the verdict on the ground of excessiveness of the jury award is denied.

Motion denied in all respects.

So ordered.