**Walter MARSH, Plaintiff,**

v.

**INTERSTATE AND OCEAN TRANS-PORT COMPANY, Defendant.**

Civ. A. No. 77–398.

United States District Court,
D. Delaware.

Sept. 11, 1981.

Richard A. Zappa of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiff.

John E. Babiarz, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

Plaintiff, a seaman, initiated this suit to recover damages for personal injuries sustained on April 18, 1975 on board a barge named "Tide 119" and owned and operated by defendant Interstate and Ocean Transport Company ("Interstate"). The case was tried before a jury which returned a verdict for plaintiff and awarded damages totalling $100,000. In response to special interroga-

tories, the Jury found that defendant Interstate was negligent and that plaintiff was not contributorily negligent. The Jury's award of damages was apportioned as follows: $15,000 for future medical expenses, $10,000 for future lost earnings and $75,000 for general damages.

Defendant has now moved for judgment notwithstanding the verdict (n.o.v.), or, alternatively, for a new trial pursuant to Federal Rules of Civil Procedure, Rules 50 and 59. In its motion, Interstate raises three claims of error and argues: (1) that plaintiff was contributorily negligent as a matter of law[1]; (2) that the award for future medical expenses and anticipated lost earnings was not supported by the evidence; and (3) that the Jury's award of general damages was excessive and unjustified by the evidence presented at trial.

In considering the motion for judgment n. o. v., the Court must view the evidence in the light most favorable to plaintiff. The Court "must expose the evidence to the strongest light favorable to the party against whom the motion is made and give him the advantage of every fair and reasonable inference." *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1178 (3d Cir. 1978), *citing Continental Ore Co. v. Union Carbide and Carbon Corp.*, 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). It is not sufficient that the facts be undisputed; there must also be no sufficient ground for inconsistent inferences to be drawn therefrom. *Arkwright Mutual Ins. Co. v. Philadelphia Electric Co.*, 427 F.2d 1273 (3d Cir. 1970). *See Turner v. "The Cabins", Tanker Inc.*, 327 F.Supp. 515 (D.Del.1971), 5A Moore, *Federal Practice* ¶ 50.07[2]. To grant defendant's motion for judgment n. o. v., the Court must conclude that no reasonable juror could find for plaintiff on the evidence presented at trial.

A motion for a new trial is addressed to the sound discretion of the trial court which may order such new trial if it is

---

1. At the close of evidence at trial, the Court denied Interstate's motion for a directed verdict

on the issue of contributory negligence.

convinced by movant's arguments that the jury's verdict is against the weight of the evidence or awards excessive or inadequate damages. *Montgomery Ward v. Duncan*, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940); *Lewin v. Metropolitan Life Insurance Co.*, 394 F.2d 608 (3d Cir. 1968); *Silverii v. Kramer*, 314 F.2d 407 (3d Cir. 1963).

It is within the framework of these standards that the Court will consider defendant's alternative motions.

## I. *Contributory Negligence*

■ Contributory negligence is the failure to exercise that degree of care for one's own safety that a reasonably prudent man would have exercised under similar circumstances. *Wenninger v. U. S.*, 234 F.Supp. 499 (D.Del.1964). *See also* Restatement (2d) of Torts § 463, comment b (1965). To be of legal significance, a plaintiff's negligence must be a significant contributing cause of his injury. *Barrett v. Robinson*, 65 F.R.D. 652 (E.D.Pa.1975); *Guerrero v. American President Lines*, 394 F.Supp. 333 (S.D.N.Y.1975); Restatement (2d) of Torts, *supra*, § 463. Where causation is an issue with regard to which reasonable persons might differ, it is one for the jury. "Ordinarily, the questions of whether a plaintiff exercised the degree of care required under the circumstances surrounding his injury and whether any negligence on a plaintiff's part contributed to his injury are questions of fact which, in a trial, by jury, must be decided by the jury." *Logullo v. Joannides*, 301 F.Supp. 722, 725 (D.Del.1969). In the majority of cases in which the issue of contributory negligence is disputed at all, one would expect that reasonable jurors could differ. Prosser, Torts § 45.

■ In this case, causation is an issue of fact. Whether Marsh's assistance in tying the stopper line was a factor contributing to his injury is a matter for the Jury, not the Court. There is evidence in the case tending to establish Marsh's freedom from contributory negligence. The Court cannot say that reasonable jurors could not have returned a verdict that Marsh's behavior met the standards of a prudent seaman attending to his own safety in the circumstances described at trial.

Marsh was under the direction of John Jumbo ("Jumbo"), the maintenance supervisor, when the accident occurred on the starboard deck of "Tide 119." Jumbo and Marsh were involved in tying off a stopper line. Marsh testified that the accident occurred 1½ to 2 seconds after he and Jumbo had finished tying the stopper line by fastening it to two deck bits (T–23–24). He further testified that he had started to move back away from the line when he noticed that a shackle, attached to another cable, was improperly positioned relative to the newly tied stopper line. He was in the process of warning Jumbo of the situation at the instant he was struck. (T–33, 99). Marsh was struck when another seaman aboard "Tide 119," Roy Kelly ("Kelly"), set in motion an anchor windlass.[2] As the windlass retracted its line, it caused a shackle attached to another cable to slide into the stopper line which Marsh and Jumbo had just finished tying off. The impact of the shackle caused the stopper line to strike plaintiff sharply on the leg. (T–22).

Marsh testified that the proper operation of the anchor windlass required the person in charge, in this case Jumbo, to give verbal or hand signals to the person operating the windlass. (T–36). Jumbo and Kelly were responsible for the operation of the windlass and hence for assuring that the lines were not in a position of danger to persons on deck before setting the windlass in motion. (T–37, Lynn Dep. 19). Marsh's testimony that no hand or vocal signals were given prior to Kelly's starting the windlass was undisputed at trial. Marsh further testified that he did not believe he was in a position of danger at any time before Kelly retracted the line. (T–37–38).

Defendant's reply brief in support of its motion for judgment n. o. v. argues that

**2.** Although both parties' pleadings repeatedly referred to an "anchor windless," the Court will use "anchor windlass" to describe "a winch with horizontal or vertical shaft and two drums used to raise a ship's anchor." Webster's Collegiate Dictionary (1979).

Marsh must have been contributorily negligent because he realized that the shackle and stopper line were improperly positioned relative to one another. (Defendant's Reply Brief at 2). While it is a plausible interpretation that, in noticing the mispositioned shackle, plaintiff, who was also aware of how an anchor windlass operates, must or ought to have become aware of the danger of his position, it is certainly not the only interpretation to which reasonable persons might subscribe. Given plaintiff's testimony that he did not fear for his personal safety and his further statement that it was his expectation that the way to correct the relative mispositioning of the shackle and stopper line was to move the shackle, (T–85), it was not unreasonable for the Jury to find that Marsh did not contribute to his injury. The Jury might reasonably have found that Marsh expected that the shackle would be moved and hand or verbal signals given before the anchor windlass was set in motion.

On the issue of contributory negligence, there is evidence in the record with regard to which reasonable persons could differ. It is established in this Circuit that "[i]t is enough to take the case to the jury on the issue of contributory negligence if the sum of the evidence leaves the issue in doubt, for it is the jury's province to resolve the doubt." *Mroz v. Dravo Corp.*, 429 F.2d 1156, 1163–64 (3d Cir. 1970). The Jury was properly entrusted with deciding the issue of causation and, in response to a special interrogatory, found Marsh not to have been negligent in any way that contributed to his injury. The Court, in light of the law and facts, finds that the Jury's finding was neither patently unreasonable nor against the weight of the evidence. With regard to the issue of contributory negligence, defendant's motion is denied.

## II. *Future Medical Expenses and Future Lost Wages*

Defendant has moved that the Jury's award with respect both to future medical expenses and future lost wages be struck down or, at the least, reduced from $15,000 to $3,000 and from $10,000 to $4,488.12 respectively. Defendant contends that the Jury's awards are against the weight of the evidence presented at trial.

### A. *Future Medical Expenses*

The motion to reduce the Jury's award with regard to an item of damages is addressed to the trial Court's sound discretion. 6A Moore, *Federal Practice*, ¶ 59.08. It is not the province of the Court arbitrarily to substitute its judgment of appropriate compensation for that of the Jury. "As this Circuit has frequently reiterated, while an award may be high, it should stand if there is ample evidence to justify it." *Van Voorhis v. U.S. Steel Corp.*, 174 F.Supp. 750, 750 (W.D.Pa.1959). In this case, however, the Court can find no evidence in the record upon which the Jury could have awarded more than $6,000 for future medical expenses.

Dr. Hogan, plaintiff's orthopedic surgeon, testified that, although it was, as a general matter, difficult to predict hospital costs, he believed that expenses for an operation on Marsh's knee would be between $2,500 and $3,000 (T–143). The only other evidence of future medical expense that was available to the Jury was Dr. Hogan's further testimony that Marsh was facing not just one, but possibly two more operations on his knee. (T–142). Taking this testimony in the light most favorable to plaintiff, the Court finds that any award for future medical expenses which exceeds $6,000 cannot be supported by the evidence.

The Court will order a new trial on the issue of future medical expenses subject to plaintiff's agreement to remittitur of all damages for future medical expenses in excess of $6,000.

### B. *Future Lost Earnings*

The Jury awarded Marsh $10,000 for future lost wages; to compensate him for the time he is expected to lose from work as a result of his accident, including time taken out for corrective surgery and recuperation. Interstate argues that Marsh's lost earnings cannot reasonably be found to exceed $4,488.12—the product of Marsh's daily wage, $106.86, and the number of days he

worked in a typical three month period, 42. The Court finds that Interstate has failed to carry its burden with regard to its implicit assertion that no reasonable trier of fact could have found Marsh, as a result of the accident aboard the "Tide 119," to be incapacitated for more than three months in the future.

Dr. Hogan testified that if Marsh undergoes the recommended surgery, he will be incapacitated for a minimum of three months. (T–139). Marsh testified that, after his 1975 operation, he was unable to work for 14 months. (T–150). Dr. Hogan agreed that, given the nature of Marsh's work, it was possible that he could be incapacitated for the longer period. (T–140). Moreover, the estimate of three months of incapacitation is based upon one operation. As was pointed out above, Dr. Hogan's testimony does not rule out the possibility that Marsh may yet have to undergo two operations before his knee is fully corrected.

In the light of this testimony, it was not unreasonable or against the evidence for the Jury to find that Marsh would be unable to work for a period of approximately 6½ months. Therefore, the Court cannot disturb the Jury's award of $10,000 for future lost earnings.

### III. *Award of General Damages*

Interstate challenges the general damages award, contending that $75,000 is an excessive amount for the pain and suffering that Marsh has endured. The Court notes that the general damages award is not limited to compensation for Marsh's pain and suffering; the award is prospective as well as retrospective. For that reason, and those stated below, the Court is unable to find the Jury's award unjustifiable or so excessive that it must be reduced or set aside.

Marsh was 29 years old at the time of the accident; he had a life expectancy of 42 years. His deportment as a witness in relating the problems caused by the accident was quite impressive. He spoke with restraint and sincerity and did not overemphasize his problems. These problems have been considerable and some of them can reasonably be anticipated to persist well into the future. Plaintiff introduced evidence on the entire range of these problems and the Court's instructions to the Jury made clear that the category of general damages was to include items in addition to pain and suffering. (Court's Instructions at 24–25).

In awarding general damages, the Jury had to consider the injury to Marsh's knee as developed in plaintiff's evidence. Dr. Hogan's testimony as to the extent and severity of Marsh's injury was uncontradicted. Testimonial evidence with respect to the past and future effects of the accident included: permanent injury to the knee including scarring and a permanent 5% impairment of normal knee functions; pain and suffering endured over the past six years; the pain and inconvenience of medical treatment, including drugs, physical therapy, an arthorotomy, a period in a knee brace and, on two occasions, time in a plaster cast; and limitations on Marsh's range of activities both at home and at work. There was also testimony that Marsh will, in all likelihood, suffer arthritis in his knee as he gets older. (T–142). Furthermore, plaintiff has felt it necessary to return to school and get his high school equivalency diploma. He fears that he will not be able to continue in his chosen career as a merchant seaman, although he wishes to do so. (T–169). Dr. Hogan also testified that it was his opinion that anyone in Marsh's situation "would be better off working in a job which required less strenuous use of their knee over a long term basis." (T–142).

Damages cannot be calculated in a strict mathematical formula, and jurors and judges often differ in their estimates of the appropriate amount to be awarded in a given case. Here, the Court cannot say that the general damages, while high, were so excessive as to warrant the Court's intervention into the Jury's findings. *Van Voorhis v. U.S. Steel Corp., supra.* There is evidence in the record to justify the Jury's finding. The award of general damages must, therefore, be permitted to stand.

### IV. *Conclusion*

Defendant Interstate's motion for judgment n. o. v. or a new trial on the issue of contributory negligence is denied.

With regard to future medical expenses, the Court will conditionally order a new trial, subject to plaintiff's acceptance of the remittitur of all damages for future medical expenses in excess of $6,000.

Defendant's motions regarding future lost wages and general damages are denied.

An order will be entered in accordance with this Opinion.