9 A.3d 56

**Michele COLLINS**

v.

**NATIONAL RAILROAD PASSENGER CORP.**

**No. 143, Sept. Term, 2009.**

Court of Appeals of Maryland.

Dec. 1, 2010.

218

220

P. Matthew Darby (Guy M. Albertini and H. David Leibensperger of Berman, Sobin, Gross, Feldman & Darby, LLP, Towson, MD), on brief, for petitioner/cross-respondent.

Stephen B. Caplis (Daniel W. Goldberg of Setliff, Turner & Holland, P.C., Baltimore, MD), on brief, for respondent/cross-petitioner.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

GREENE, J.

We are asked to determine whether a jury instruction proposed by the plaintiff in a suit brought pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60 (2006), was improperly denied. Michele Collins ("Petitioner" or "Collins") brought survivorship and wrongful death actions against the National Railroad Passenger Corporation ("Respondent" or "Amtrak") alleging that Amtrak's negligence caused the death of her husband and former Amtrak employee, Robert Collins ("Decedent" or "Mr. Collins"). Mr. Collins was electrocuted while on assignment to take alignment readings of overhead electrical wires on a span of railroad track. At trial, Amtrak contended that Mr. Collins was solely responsible for his fatal injuries because he mounted the roof of a work vehicle and came into contact with an energized wire absent any specific order to do so and in violation of a company rule. At trial, Collins proposed a jury instruction explaining that Amtrak could not defend against the negligence claim by asserting that the Decedent had assumed the risks of his injury. Although FELA expressly bars the assumption of risk defense, it was injected into the trial by Amtrak; therefore, the trial judge abused his discretion by not providing a cautionary instruction.[1] Accordingly, we shall reverse and remand for a new trial.

---

1. When referring to a "cautionary instruction", we adopt the phrasing used by federal courts in Federal Employers' Liability Act cases, *see e.g.*

## I.

On February 17, 2005, Mr. Collins was working his normal weekday shift, 10:00 p.m. to 6:00 a.m., as an Electrical Traction Lineman based out of Amtrak's Perryville, Maryland, maintenance facility. Mr. Collins had been employed in the Electrical Traction Department for approximately eight years. He was a member of a crew of five men ("the crew" or "D–126") including: the crew foreman; the Cat Car[2] Operator; an Electric Traction Lineman; and an Electric Traction Lineman Trainee. Mr. Collins's job involved routine maintenance of the electrical catenary system[3] along Amtrak's northeast corridor, specifically the section between Perryville and Baltimore, Maryland.

Around 3:40 a.m., the crew was directed to conduct alignment readings of the catenary system on a recently serviced section of track. The electricity remained on while the readings were taken, so the crew foreman conducted a safety briefing to discuss working under the energized wire. The

*Taylor v. Burlington N. R.R.*, 787 F.2d 1309, 1316 (9th Cir.1986) and we understand the meaning to be an instruction that clarifies the distinction between assumption of risk and contributory negligence. For example, in *Sauer v. Burlington Northern R.R. Co.*, 106 F.3d 1490, 1493 (10th Cir.1996) the Tenth Circuit approved the following language as an appropriate cautionary instruction:

> You may not find contributory negligence on the part of the plaintiff, however, simply because he acceded to the request or direction of the responsible representatives of his employer that he work at a dangerous job, or in a dangerous place, or under unsafe conditions.

106 F.3d 1490, 1493 (10th Cir.1996) (quotations and citations omitted); *accord Fashauer v. N.J. Transit Rail Operations*, 57 F.3d 1269, 1280 (3d Cir.1995); *Jenkins v. Union Pac. R. Co.*, 22 F.3d 206, 209–10, (9th Cir.1994); *Gish v. CSX Transp.*, 890 F.2d 989, 993 (7th Cir.1989).

2. "Cat Car" is the colloquial term for a catenary maintenance vehicle, which is a diesel-powered rail car that is used to assist crews in the taking of alignment readings along the railroad track. The crew routinely rode these cars along the railroad to perform their maintenance duties.

3. The electrical catenary system provides current to electric trains through a series of overhead wires which run above the railroad tracks.

readings were taken and while the crew foreman was recording the data collected during the assignment, the men witnessed a bright flash, heard an explosion, and then a thump on the roof. Mr. Boone found Mr. Collins in flames on the roof of the Cat Car. Robert Collins suffered fatal electrical burns after coming into contact with an electrified railing on the roof of the Cat Car.

It is presumed that Decedent mounted the roof of the Cat Car to manually tie down the pantograph,[4] and the physical evidence indicated that Decedent sustained his fatal injuries while "stomping."[5] "Stomping" was a method used by crew members of Amtrak's Mid–Atlantic South Division to communicate to Cat Car operators that the pantograph needed lowering. The "stomping" method required a crew member to climb atop the roof of the Cat Car and to stomp on the portion of the roof that was directly above the operator.[6] At trial, Amtrak officials testified that a crew member had to break the company's "three-foot" rule, which requires employees to maintain three feet of distance from the catenary system, in order to use the stomping method. On cross-examination,

---

4. The roof of the Cat Car is equipped with a pantograph, which is raised to the overhead contact wire of the catenary system. When attached to an energized contact wire, the pantograph becomes electrically charged. The pantograph only becomes de-energized when it is unattached from the catenary wire. Before a pantograph can be tied down, the Cat Car operator must lower the pantograph, which requires a crew member to communicate to the Cat Car operator that the pantograph needs lowering. Decedent's crew used two methods of communication, namely "stomping" on the roof of the Cat Car or yelling.

5. Decedent suffered severe burn injuries to his groin area. The Court of Special Appeals accepted the presumption that the physical evidence suggested Decedent was engaging in the practice of stomping when he was electrocuted. *Collins v. Nat'l R.R. Passenger Corp.*, 187 Md.App. 295, 303, 978 A.2d 822, 827 (2009). There is no contention that the evidence presented at trial rebutted this presumption.

6. The part of the roof directly above the Cat Car operator was within three feet of the pantograph, therefore, a crew member had to straddle a safety bar, which was located within three feet of the pantograph, to stomp on the roof.

Amtrak officials conceded awareness of the "stomping" method, but acknowledged that it did not bar the practice.

During the trial, Amtrak officials and Decedent's fellow crew members testified about Decedent's work experience, safety training, and his decision not to invoke Amtrak's Right of Refusal policy.[7] Collins offered an instruction on the inapplicability of the assumption of risk defense "because of the potential overlap with assumption of risk and contributory [/] comparative negligence.... What might happen is that they could say they believe Mr. Collins was standing there, he knew that the pantograph was energized and he took, you know, the classic voluntary assuming, getting close to the pantograph to do his job."

Collins's proposed instruction No. 17 stated:

45 U.S.C. § 54 of the Federal Employer's (sic) Liability Act provides in pertinent part

In any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to ... any of its employees, such employee shall not be held to have assumed the risks of his employment where such injury ... resulted in whole or in part from the negligence of any of the officers, agents or employees of such carrier....

Assumption of risk is not a proper defense in a FELA action and as such it may not be considered in any way in reaching your decision.

45 U.S.C. § 54[.]

The trial judge denied Collins's proposed jury instruction. According to the trial judge, the evidence did not inject assumption of risk into the case; therefore, an assumption of risk instruction would have only confused the jury on the issue of contributory negligence. The jury returned a verdict in favor of Amtrak at the conclusion of a five-day trial.

---

7. Under Amtrak's Right of Refusal policy, employees may decline to work under particular circumstances if they feel that the work cannot be completed safely.

In her subsequent appeal to the Court of Special Appeals, Petitioner contended that "there was ample evidence from which the jury could have, and most likely did, improperly draw the conclusion that [Petitioner] should not recover because [the Decedent] assumed the risk of the incident." *Collins v. Nat'l R.R. Passenger Corp.*, 187 Md.App. 295, 307, 978 A.2d 822, 829 (Md.Ct.Spec.App.2009). Amtrak filed a conditional cross-appeal requesting that the intermediate appellate court review the Circuit Court for Baltimore City's denial of Amtrak's motion for judgment should it decide to reverse the Circuit Court's judgment. The Court of Special Appeals affirmed the judgment, agreeing that the cautionary instruction was not necessary because all of the evidence tended to implicate contributory negligence and not assumption of risk. *Collins*, 187 Md.App. at 315–16, 978 A.2d at 834. Collins filed a petition for a writ of certiorari in this Court and asked:

Whether the Court of Special Appeals, in this case of first impression in Maryland, erred in not applying the majority rule [8] in FELA cases that a jury instruction stating that

---

**8.** We do not cast our decision relative to a majority or minority rule because our analysis of federal case law reveals no such dichotomy. Rather, the federal opinions show fact-specific holdings on the instruction issue, which consider the whole context of the employee's injury: whether there were general or specific orders, knowledge of dangerous conditions, safe alternatives, extraordinary or ordinary risk, customary deviation from operating rules, exercise of an opt-out policy, or evidence of choice. *See generally Fashauer v. N.J. Transit Rail Operations, Inc.*, 57 F.3d 1269, 1281 (3d Cir.1995) (holding that an instruction was not required because it was not raised at trial and the jury would not have sua sponte considered the defense); *Jenkins v. Union Pac. R.R. Co.*, 22 F.3d 206 (9th Cir.1994) (holding that an instruction was required because there was conflicting evidence of whether an order was direct or general); *Taylor v. Burlington N. R.R. Co.*, 787 F.2d 1309, 1316–17 (9th Cir.1986) (holding that an instruction was not required because the railroad wanted to introduce evidence that the employee should "not have performed his job" and the court did not allow the evidence to be introduced because it indicated assumption of risk); *Joyce v. Atlantic Richfield Co.*, 651 F.2d 676, 683 (10th Cir.1981) (holding that, under the Jones Act, analogous to FELA, an instruction was required because the charge given to the jury focused on acceptance of a dangerous condition and not a negligent act or omission); *Heater v. Chesapeake and Ohio Ry. Co.*, 497 F.2d 1243, 1249 (7th Cir.1974) (noting that an instruction on assumption of the risk should

assumption of the risk is not a defense should be given where there is any danger that the defense was explicitly or implicitly raised by the evidence, and in so doing erroneously affirmed the decision of the trial court not to give the instruction in this case.

Amtrak filed a cross-petition for certiorari and presented this question:

Whether the Court of Special Appeals erred by not reviewing and not overturning the trial court's denial of Amtrak's motion for judgment as the decedent was the sole cause of his injuries.

We granted both petitions. *Collins v. Nat'l R.R. Passenger Corp.*, 411 Md. 598, 984 A.2d 243 (2009).

We hold that a notable portion of the evidence presented by Amtrak addressed elements relevant to the defense of assumption of risk and not necessarily relevant to contributory negligence. Amtrak's evidence drew attention to the voluntary nature of Decedent's encounter with the electrified equipment and his choice to mount the roof of the train car, both of which would be ancillary to a contributory negligence analysis, which requires proof of a careless act, or failure to act, beyond knowledgeable acceptance of a dangerous condition. Thus, a

---

not have been given and may constitute reversible error when combined with other substantial error); *Rivera v. Farrell Lines, Inc.*, 474 F.2d 255, 258 (2d Cir.1973), *cert. denied*, 414 U.S. 822, 94 S.Ct. 122, 38 L.Ed.2d 55 (1973) (holding, under the Jones Act, analogous to FELA, that an instruction was required because evidence of knowledge of dangerous conditions existing in the "line of duty" and carelessness comprised the entire defense); *Clark v. Pa. R.R. Co.*, 328 F.2d 591, 595 (2d Cir.1964) (holding it was not error to refuse an assumption of the risk instruction because it would have "water[ed] down or even eliminate[d]" the issue of contributory negligence); *Koshorek v. Pa. R.R. Co.*, 318 F.2d 364, 367 (3d Cir.1963) (holding that an instruction was required because the employee testified to awareness of harmful dust particles at his jobsite and the circumstances of the case called for a "careful distinction" between assumption of the risk and contributory negligence); *Hamrock v. Consol. Rail Corp.*, 151 Ill.App.3d 55, 103 Ill.Dec. 736, 501 N.E.2d 1274, 1280 (1986) (holding that an instruction was required because plaintiff put on evidence of performing a "dangerous job under orders and in the customary manner without safe alternatives").

cautionary instruction was necessary to instruct the jurors that they may not conclude that Mr. Collins assumed the risk of his injuries and that they were to apply the law applicable to contributory negligence only if they found first that Amtrak was negligent, and secondly that Mr. Collins's negligence contributed to his fatal injury. The error was not harmless because if the jury found that Decedent had assumed the risk of his injuries by voluntarily choosing to work under energized lines, that determination negated Amtrak's duty and operated as a complete bar to Petitioner's recovery. Further, we shall hold that the intermediate appellate court did not err in failing to reach the issue raised in Amtrak's conditional cross-appeal, because it was moot in light of that court's decision to affirm the judgment of the Circuit Court. We shall reverse the judgment of the Court of Special Appeals and direct that court to remand the case to Circuit Court for purposes of a new trial.

## II.

We apply the abuse of discretion standard of review when considering a trial judge's denial of a proposed jury instruction. *See Sidbury v. State*, 414 Md. 180, 186, 994 A.2d 948, 951 (2010) (stating that "[t]he decision of whether to give supplemental instructions is within the sound discretion of the trial judge and will not be disturbed on appeal absent a clear abuse of discretion.") (citing *Roary v. State*, 385 Md. 217, 237, 867 A.2d 1095, 1106 (2005)). In *Gunning v. State*, 347 Md. 332, 351–52, 701 A.2d 374, 383 (1997), we reiterated that "[w]here the decision ... of the trial court is a matter of discretion it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." A trial judge exercises discretion by assessing whether the evidence produced at trial warrants a particular instruction on legal principles applicable to that evidence and to the theories of the parties. Therefore, the onus is on the trial judge to discern and ensure that the jury instructions encompass the substantive law applicable to the case. While

we defer to the trial judge's ruling, an improper exercise of discretion may cause prejudice to a party and result in reversible error. *Cf. Flores v. Bell,* 398 Md. 27, 33–34, 919 A.2d 716, 719–20 (2007) (noting that the burden is upon the complaining party to show both the probability of prejudice and error that is both "manifestly wrong and substantially injurious").

■ There are three requisite components to our analysis of whether the proposed instruction should have been incorporated into the ultimate charge to the jury: (1) the requested jury instruction must be a correct exposition of the law; (2) the particular law must have been applicable to the evidence before the jury; and (3) the substance of the requested instruction must not have been fairly covered by the instructions actually given. *See Wegad v. Howard Street Jewelers, Inc.,* 326 Md. 409, 414, 605 A.2d 123, 126 (1992) (noting the impact of Maryland Rule 2–520(c) on the third component of the analysis); *see Dickey v. State,* 404 Md. 187, 197–98, 946 A.2d 444, 450–51 (2008) (holding the same requirements arise from the criminal law counterpart Md. Rule 4–325(c)); *accord Hamrock v. Consol. Rail Corp.,* 151 Ill.App.3d 55, 103 Ill.Dec. 736, 501 N.E.2d 1274, 1279 (1986) (stating that "a court's charge . . . will be deemed proper only where it adequately and correctly covers the substance of the requested instructions and is fair to both parties").

■ In Maryland, litigants are entitled to have their theory of the case presented to the jury, provided the theory is a correct exposition of the law and is supported by the evidence. *Wegad,* 326 Md. at 414, 605 A.2d at 126 (citing *Sergeant Co. v. Pickett,* 285 Md. 186, 194, 401 A.2d 651, 655 (1979)). Consequently, in a FELA case a litigant is entitled to some assurance that a defense, abolished by the governing statute, will not be considered by the jury. The use of negative instructions, i.e. instructions that the jury should 'not' hinge its resolution on an inapplicable doctrine, should, however, be given only when necessary. *Ellsworth v. Sherne Lingerie, Inc.,* 303 Md. 581, 599–600, 495 A.2d 348, 357 (1985)

(indicating that judges determine when a negative instruction will be helpful and not harmful to the jury's deliberations).

In the present case, the instruction actually given by the trial judge did not reference assumption of risk nor the inapplicability of the doctrine to cases involving a FELA action.[9] Our task, therefore, is to determine whether the proposed instruction was applicable to the evidence presented at trial. *See also Fearnow v. Chesapeake & Potomac Tel. Co.*, 342 Md. 363, 385, 676 A.2d 65, 76 (1996) (stating "[i]f any one part of the test is not met, we will affirm the trial court's denial of the request for instruction"). As part of our review of the applicability of Collins's proposed instruction to the evidence, we consider the probability that the absence of the instruction impacted the jury's deliberations.

### III.

Petitioner contends that Amtrak's focus on Decedent's knowledge and voluntary action in the face of a dangerous condition, rather than carelessness, implicitly appealed to the forbidden defense of assumption of risk. In response, Respondent argues that Decedent was the sole cause of his fatal injury because Amtrak gave no order to mount the roof of the car, Decedent must have known it was dangerous, and he chose to encounter the energized wire; therefore, the instruction on contributory negligence was applicable and sufficient. If, as Respondent argues, the evidence adduced at trial exclusively implicated that Decedent's fatal injury resulted from carelessly adding new dangers to conditions that the employer negligently maintained, there would have been no abuse of discretion in denying the proposed instruction. If the evidence, however, tended to show a voluntary, knowledgeable acceptance of a dangerous condition necessarily encountered to perform the duties of employment (as we perceive the

---

9. The Court of Special Appeals concluded, and we agree, that the proposed instruction "was a correct statement of law and was not fairly covered by the other instructions." *Collins*, 187 Md.App. at 308, fn. 6, 978 A.2d at 830, fn. 6.

record to reveal) the judge abused his discretion by denying the instruction.

Upon review of federal case law interpreting 45 U.S.C. § 54,[10] the evidence adduced at trial, the jury instructions, and the verdict sheet, and in light of the applicable standard of review, we hold that there was error in omitting an instruction on the inapplicability of the assumption of risk affirmative defense and that the error prejudiced Petitioner.[11]

### A. An Assumption of Risk Defense is Prohibited

In 1906, Congress enacted FELA, a broad remedial framework addressing recovery for injured railroad workers.[12] *See Atchison, Topeka & Santa Fe Ry. Co., v. Buell,* 480 U.S. 557,

10. The assumption of risk doctrine is explicitly addressed in the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60 (2006), a federal statute; therefore, we consider federal substantive law in addition to the Maryland Rules of Civil Procedure and related case law in our analysis of the jury instruction issue. *St. Louis Sw. Ry. Co. v. Dickerson,* 470 U.S. 409, 411, 105 S.Ct. 1347, 1348, 84 L.Ed.2d 303, 306 (1985) (stating "[a]s a general matter, FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal"); *see also CSX Transp., Inc. v. Bickerstaff,* 187 Md.App. 187, 241, 978 A.2d 760, 791 (2009). This Court looks to the decisions in the federal courts, which interpret the application of FELA's abolition of the affirmative defense of assumption of risk. *See Norfolk S. Ry. v. Sorrell,* 549 U.S. 158, 166, 127 S.Ct. 799, 805, 166 L.Ed.2d 638, 647 (2007).

11. *See Harris v. David S. Harris, P.A.,* 310 Md. 310, 319, 529 A.2d 356, 360 (1987) (stating that "unless it is perceived that the error causes the injury there can be no reversal merely because there is error. 'We have defined injury, or prejudice to the litigant, as error that influenced the outcome of the case.' ") (citation omitted).

12. Liability under FELA is described in pertinent part:

Every common carrier by railroad while engaging in commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment. 45 U.S.C. § 51 (2006).

562, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563, 571 (1987) (explaining that Congress intended FELA to provide a remedial framework for railroad employees and to eliminate several common law defenses to tort liability); *cf. Green v. River Terminal Ry. Co.*, 763 F.2d 805, 806 (6th Cir.1985) (noting that courts should liberally construe the provisions of FELA in favor of injured railroad employees in light of the remedial objective of the statute).

■ At the time of passage of FELA, the doctrine of assumption of risk was "applied generally . . . because of acceptance of the theory that the employee's compensation was based upon the added risk to his position and that he could quit when he pleased." *Tiller, ex. v. Atl. Coast Line R.R. Co.*, 318 U.S. 54, 61, 63 S.Ct. 444, 448, 87 L.Ed. 610, 614 (1943). The doctrine, however, was never practically distinct from contributory negligence and so the overlap "became the subject of endless litigation." *Tiller*, 318 U.S. at 63, 63 S.Ct. at 449, 87 L.Ed. at 615. In 1939, Congress abrogated the assumption of risk defense from cases brought pursuant to FELA. Petitioner extracted her proposed jury instruction for use at trial from the language of the statute:

§ 54. Assumption of risks of employment

In any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or the death of, any of its employees, *such employee shall not be held to have assumed the risks of his employment* in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier; and no employee shall be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

45 U.S.C. § 54 (emphasis added); *see Tiller*, 318 U.S. at 58, 63 S.Ct. at 446, 87 L.Ed. at 612 (explaining that Congress intended for 45 U.S.C. § 54 to abolish every vestige of the assump-

tion of risk defense from all claims arising under FELA). Congress abolished the doctrine of assumption of risk in the FELA cases because the doctrine failed to acknowledge that employers, not employees, controlled working conditions. *See Tiller*, 318 U.S. at 65, 63 S.Ct. at 450, 87 L.Ed. at 617 (noting the Senate Judiciary Committee's belief that the doctrine of assumption of risk was unsuited for contemporaneous economic activities).

Assumption of risk means, "[a]t common law an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties...." *Taylor*, 787 F.2d at 1316 (*citing* PROSSER AND KEETON ON TORTS § 68, 480–81 (W.P. Keeton 5th ed.1984)). The effect of the amendment to FELA is that a statutory employer may no longer escape liability for deviating from the duty of care owed to employees by urging that the employee was aware of the dangers that might befall him or her but undertook employment in spite of those dangers in exchange for compensation. An employee's assumption of the risk of the employment environment is no longer presumptively implied from the terms of an employment contract and the defense may not be used to bar an employee's recovery under the Act.

FELA is a comparative negligence statute, thus, a claimant's recovery may only be reduced upon a showing of contributory negligence.[13] 45 U.S.C. § 53. "Contributory negligence . . . is not a complete bar to a plaintiff's recovery but, rather, operates to diminish the recovery in proportion to the parties' comparative fault." *Butynski v. Springfield Terminal Ry.*, 592 F.3d 272, 276 (1st Cir.2010) (citation omitted). "Contributory negligence . . . is a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist." *Taylor*, 787 F.2d at 1316 (citing PROSSER AND KEETON ON TORTS § 65, 451–52). Therefore, if the defendant employer in a

---

13. "[U]nlike under Maryland law, a plaintiff's negligence does not bar a claim for damages under FELA." *CSX Transp., Inc. v. Richard Bickerstaff et al.*, 187 Md.App. 187, 219, 978 A.2d 760, 779 (2009).

FELA case alleges sufficient evidence that the plaintiff employee engaged in conduct that caused an undue risk of harm to himself or herself, then the jury should be instructed to apportion a percentage of fault to the employee so that any awarded damages can then be appropriately reduced. "The argument that plaintiff cannot recover because of [the] deceased's contributory negligence is wholly without merit. Contributory negligence, while it may diminish the amount of recovery, is not a [complete] defense to a cause of action bottomed on the Federal Employers' Liability Act, §§ 3, 45 U.S.C.A. §§ 53." *Ramsouer v. Midland Valley R. Co.*, 135 F.2d 101, 107 (8th Cir.1943). Contributory negligence does not bar recovery in FELA cases, it reduces the amount of the damage award.

Despite the explicit abolition of the doctrine of assumption of risk from the resolution of claims brought pursuant to FELA, the practical complications of its similarity to contributory negligence, which is a permitted defense, persist. "[W]hen a statute exonerates a servant from [assumption of the risk], if at the same time it leaves the defense of contributory negligence still open to the master, then, unless great care be taken, the servant's rights will be sacrificed by simply charging him with assumption of risk under another name." *Koshorek v. Pa. R.R. Co.*, 318 F.2d 364, 369 (3d Cir.1963) (citation omitted). Because a finding of contributory negligence on the part of the employee will reduce his or her damages, while a finding of assumption of risk would bar recovery, "courts [and juries] have the delicate job of separating out evidence on one theory from evidence on the other." *Fashauer*, 57 F.3d at 1274.

### B. Determining the Necessity of a Cautionary Instruction

In our view, federal case law interpreting FELA sets a low threshold for determining whether an assumption of the risk instruction is warranted; however, there is no consensus among the federal courts as to the precise evidentiary scenarios which necessitate a cautionary instruction. The Third

Circuit concluded, in *Fashauer*, that, "the most difficult part of the inquiry is determining when the facts merit [the instruction]." 57 F.3d at 1275. As noted by the *Fashauer* court, "some courts have guarded against jury confusion by ... describing assumption of the risk to the jury and instructing it not to reduce the plaintiff's recovery on that basis." *Fashauer*, 57 F.3d at 1274 (citing the Third Circuit's decision in *Koshorek*, 318 F.2d at 370 and the Ninth Circuit's decision in *Jenkins*, 22 F.3d at 212); *see Taylor v. Burlington N. R.R. Co.*, 787 F.2d 1309, 1316 (1986) (holding that evidence which implicated assumption of the risk when an employee entered a hostile workplace and continued to perform his job was inadmissible altogether so no instruction was needed on how to differentiate the legal theories applicable to the evidence). Other circuits, however, have been more hesitant to provide the instruction when the doctrine is not explicitly raised by the litigants.[14]

In the present case, the intermediate appellate court employed the analytical approach suggested by the *Fashauer* court and concluded that Amtrak's evidence did not explicitly

---

**14.** As noted by the Third Circuit in *Fashauer*, 57 F.3d at 1274–75:

As one court has put it, 'the statutory elimination of the defense of assumption of risk, when read to the jury in FELA cases where that 'defense' has been neither pleaded nor argued, serves only to obscure the issues in the case.' *Casko v. Elgin, Joliet and Eastern Ry. Co.*, 361 F.2d 748, 751 (7th Cir.1966). The Court of Appeals for the Second Circuit, relying on the proposition that 'it is a mistake to give instructions on subjects not directly in issue in a case,' *DeChico v. Metro–North Commuter R.R.*, 758 F.2d 856, 861 (2d Cir.1985) (citation omitted), has cautioned that 'an assumption of risk instruction may be particularly inappropriate in cases where it "might well cause such confusion as to water down or even eliminate the issue of contributory negligence." ' *Id.* at 861 (quoting *Clark v. Pennsylvania R.R. Co.*, 328 F.2d 591, 595 (2d Cir.), *cert. denied,* 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964)); see also *Clark v. Burlington N., Inc.*, 726 F.2d 448, 452 (8th Cir.1984) ('Cases discussing the issue have generally condemned the giving of an assumption of risk instruction in FELA actions.'); *Heater v. Chesapeake and Ohio Ry. Co.*, 497 F.2d 1243, 1249 (7th Cir.) (an assumption of the risk 'instruction is a confusing negative statement which refers to issues not involved in a FELA case'), *cert. denied,* 419 U.S. 1013, 95 S.Ct. 333, 42 L.Ed.2d 287 (1974).

or implicitly raise the assumption of the risk defense; therefore, according to the Court of Special Appeals, the trial court committed no error in omitting the instruction. The first dispositive factor according to *Fashauer* is whether the employee acted pursuant to an order or to his or her own discretion. *Fashauer*, 57 F.3d at 1278 (recovery can never be reduced because of implied consent in performing a task as specifically directed). An employee may not be found to be contributorily negligent if he or she followed a direct order. "In other words, when a plaintiff has no real choice, his recovery should not be reduced because he performed the task, regardless of whether the plaintiff acted reasonably or unreasonably." *Fashauer*, 57 F.3d at 1279; *accord Jenkins*, 22 F.3d at 211–12. The Ninth Circuit distinguished general and direct orders in *Jenkins*, noting that the former implicates contributory negligence and the latter the forbidden assumption of the risk doctrine:

> The traditional rule [is] that when an employee carries out his supervisor's *general order* in an unsafe manner, he is responsible under FELA for his own contributory negligence. But when an employee carries out a *direct order*, even if he has reason to know the order exposes him to danger, he is not contributorily negligent; rather his conduct falls under the abolished doctrine of assumption of the risk.

*Jenkins*, 22 F.3d at 211 (emphasis added). Under *Fashauer* and *Jenkins*, direct orders implicate assumption of the risk, while general orders implicate contributory negligence.

Secondly, under *Fashauer*, if there is evidence of a general order, if the employee exercised discretion, or alternative methods to perform the task were available, then the reasonableness of an employee's actions is dispositive and "unreasonable assumptions of risk constitute evidence of contributory negligence." [15] *Fashauer*, 57 F.3d at 1278. The Third Circuit

---

**15.** Upon a finding that an employee unreasonably assumed risk, "[the] damage award may be subject to apportionment." *Fashauer*, 57 F.3d

summarized the confluence of unreasonable assumption of the risk and contributory negligence as follows:

> The subcategory of unreasonable assumption of the risk sounds suspiciously like a negligence concept. In fact, in such cases—where the plaintiff unreasonably assumed a known risk—the difference between assumption of risk and contributory negligence appears purely semantic. Rather than saying the skier [plaintiff] assumed a risk, we easily could say that he failed to act with due care.

*Fashauer*, 57 F.3d 1269, 1276 (citing PROSSER AND KEETON ON TORTS, § 68 at 481); *Smith v. Seven Springs Farm, Inc.*, 716 F.2d 1002, 1005 (3d Cir.1983).[16]

Our concern with the Court of Special Appeals's opinion, decided pursuant to *Fashauer*, is that it did not address the full spectrum of reasonable inferences that the jury may have drawn from the evidence regarding both orders and discretion, and reasonable or unreasonable action. We cannot say as a matter of law that the assumption of risk defense was not injected into the case because as a matter of fact it was implicated by the evidence. Thus, the jury was denied the benefit of having the law explained explicitly before rendering a verdict. Here we have "assumption of the risk masquerading under another name," and a cautionary instruction was

---

at 1280 (quoting Victor E. Schwartz, COMPARATIVE NEGLIGENCE, § 9–4(c)(2), 214 (3d ed.1994)).

**16.** In *Smith,* the Third Circuit held that an expert skier reasonably assumed the risk of his descent down a dangerous slope; therefore, he was barred from recovery because his conduct negated the defendant's duty of care, but if a novice skier had encountered the same slope, he or she would be found to have unreasonably assumed the risk of his or her conduct and his or her recovery would be reduced in accordance with the doctrine of comparative negligence. If the Court of Special Appeals had applied this analogy from the *Fashauer* court to the instant case, it would most likely have concluded that Mr. Collins was an expert skier, as an Electrical Traction Lineman with eight years of experience, who descended down a dangerous slope, by working within an area with electrically charged heavy machinery. Thus, applying the Third Circuit's analogy, Mr. Collins engaged in a reasonable assumption of the risk under *Fashauer* implicating the defense of assumption of the risk and necessitating a cautionary instruction.

required to ensure a proper application of the statute to the evidence presented to the jury. *Green v. River Terminal Ry.,* 763 F.2d 805, 806 (6th Cir.1985) (explaining that in light of FELA's remedial purpose, the "statute should be liberally constructed in favor of the injured plaintiff").

Therefore, in light of the *Fashauer* analysis, we think it prudent for the trial judge to give a cautionary instruction when evidence of an employee's knowledge of dangerous conditions of employment is before the jury, where the jury must draw inferences from the facts about the existence of direct or general orders, and where determinations of reasonableness must be made. "[A cautionary instruction] is properly given when the issue of assumption of risk is expressly or implicitly before the jury, even though not explicitly raised at trial." *Hamrock,* 103 Ill.Dec. 736, 501 N.E.2d at 1279. As noted by the Court of Special Appeals:

> [I]f no evidence of impermissible assumption of risk has reached the jury, a correct instruction on contributory negligence will do. *However, if, either because of evidence introduced at trial or because of statements made by counsel in opening or closing arguments, there is a risk that the implied consent theory of assumption of the risk seeped its way into the case, the jury should be instructed* that it may not find contributory negligence on the part of the plaintiff ... simply because he acceded to the request or direction of the responsible representatives of his employer that he work at a dangerous job, or in a dangerous place, or under unsafe conditions.

*Collins,* 187 Md.App. at 310, 978 A.2d at 831 (citing *Fashauer,* 57 F.3d at 1280) (internal citations omitted and emphasis added).

We are cognizant of the delicate task before a trial judge who must discern whether the evidence adduced might evoke an impermissible line of reasoning among the jurors, while being required under the Maryland rules of civil procedure and common law to adequately address a defendant's theory of the case, including affirmative defenses. *Cf. Clark v. Pa. R.R.*

*Co.,* 328 F.2d 591, 595 (2d Cir.1964) (holding that an assumption of the risk instruction "might well cause such confusion as to water down or even eliminate the issue of contributory negligence"). The potential prejudice to an injured employee, namely a complete bar to recovery, however, warrants careful scrutiny of the evidence and the inferences that jurors may reasonably draw from the presentation of the case.

### C. Instruction was Applicable in the Instant Case

The jury instruction on contributory negligence was applicable to the evidence yet it was insufficient because the evidence also implicated assumption of the risk. *See Siciliano v. Denver & R.G.W. R.R.,* 12 Utah 2d 183, 364 P.2d 413, 415 (1961), *cert. denied,* 368 U.S. 979, 82 S.Ct. 476, 7 L.Ed.2d 521 (1962) (noting that "[t]here may be a case where the issue was not pleaded but where the evidence so emphasizes the fact that the employee recklessly and foolishly took on a known and dangerous hazard as to 'create improper inferences' that should be 'dispelled' by a cautionary instruction"). In the instant case, the jury was instructed to presume that the Decedent acted with due care, i.e. that he had acted reasonably. Amtrak presented evidence about the Decedent's choice not to exercise his Right of Refusal and his failure to use the care that a reasonably prudent person would by coming into contact with the live wire, arguably, to show that the Decedent acted unreasonably. Thus, the jury was instructed about contributory negligence so that liability could be apportioned between Amtrak and the Decedent if the jury found both parties to have acted negligently.

Amtrak contended that the Decedent was the sole cause of his fatal injury because he was not acting pursuant to Amtrak's orders, he knew it was dangerous to mount the roof of the Cat Car, and he voluntarily chose to place himself at risk because he encountered an energized wire. The record reflects, and at oral argument before this Court Amtrak emphasized, that it was baffled by Decedent's choice and that the choice, in effect, precluded Amtrak's negligence under the circumstances because causation was attributable only to De-

cedent. An employer may not, however, benefit from a finding of non-negligence based on an impermissible inference by the jury, which is our perception of the result in this case.

The Court of Special Appeals analyzed two potential evidentiary sources of confusion for the jury, at Collins's behest, namely the Right of Refusal Policy and Decedent's decision to mount the roof of the Cat Car. That court held that there was no error in denying Collins's proposed jury instruction because neither evidentiary source necessitated an assumption of the risk instruction. *Collins,* 187 Md.App. at 314–16, 978 A.2d at 833–34. The intermediate appellate court explained:

> In light of the evidence adduced that (1) the Decedent violated the standard of care, (2) there was a reasonable alternative in instructing the operator to lower the pantograph, and (3) no crew member ordered the Decedent to go onto the roof of the Cat Car and somehow get close to the pantograph, we conclude that the doctrine of assumption of risk was not implicated by the evidence elicited at trial pertaining to the Decedent's decision to go onto the roof of the Cat Car when the pantograph was energized.

*Collins,* 187 Md.App. at 315–16, 978 A.2d at 834. In essence, the court held that because there was no direct order to mount the roof, Mr. Collins was charged with acting reasonably, which he did not do, therefore the jury was only confronted with the possibility that he was contributorily negligent.

We conclude, by contrast, that there was evidence adduced that Mr. Collins was acting pursuant to custom, it was to be presumed that he acted reasonably, and Amtrak mounted a defense directed to the elements of assumption of the risk in addition to, if not to the near exclusion of, contributory negligence. *See Joyce v. Atlantic Richfield Co.,* 651 F.2d 676, 683 (10th Cir.1981) (holding that, under the Jones Act applying principles of FELA, an assumption of the risk instruction was necessary because the evidence focused on the employee's acceptance of the dangerous condition and not the employee's negligent act or omission); *see also Rivera v. Farrell Lines, Inc.,* 474 F.2d 255, 257–58 (2d Cir.1973) (stating that a jury

finding of contributory negligence based on the employee's "strength of knowledge that a dangerous condition in his line of duty ... his working in that line of duty" was "assumption of the risk masquerading under another name"). A cautionary or clarifying instruction was needed to direct the jury to consider Decedent's carelessness, not his acceptance of risk.[17]

### 1. Evidence of the Right of Refusal Policy Injected the Doctrine into the Case

Petitioner asserts that evidence of the Decedent's decision not to invoke his Right of Refusal warranted the cautionary instruction because the jury may have concluded that the Decedent assumed the risks of his employment because he did not refuse to perform the job under the particular conditions, i.e. the energized line. Respondent asserts that the evidence of the Decedent's decision not to opt out of the assignment, or request that the electricity be shut down from the area of track involved is evidence of contributory negligence, not assumption of risk because the evidence shows that safer alternatives, besides quitting, were available.

It is undisputed that employees of Amtrak may invoke the Right of Refusal policy, which was offered into evidence through the testimony of Gerard Nangle, the Director of Electrical Traction Maintenance. According to Mr. Nangle, "any member of the engineering department ha[d] the right to refuse work that they [felt was] unsafe." The intermediate appellate court held that evidence describing Amtrak's Right of Refusal policy did not "expressly or implicitly inject[ ] assumption of the risk into the trial." *Collins*, 187 Md.App. at 314, 978 A.2d at 833. The court's reasoning on that point follows:

Contrary to Collins'[s] contention, Amtrak's reference to the Right of Refusal was *not for the purpose* of arguing that the

---

17. As noted earlier in this opinion, an instruction that distinguishes assumption of risk from contributory negligence without mentioning the verbiage "assumption of risk" is an acceptable instruction. *See* n. 1 *supra*.

Decedent had the right to refuse to work under an energized wire, thereby implying that he voluntarily accepted working under a known dangerous condition. *Cf. Taylor,* 787 F.2d at 1316 ("The employee who enters the workplace for a routine assignment in compliance with the orders and directions of his employer or its supervising agents, who by such entry incurs risks not extraordinary in scope, is not contributorily negligent, but rather is engaging in an assumption of the risk.").[18] Instead, Amtrak used the Right of Refusal to show a safer alternative to conducting the catenary alignment readings under an energized wire, namely, doing the same job under a de-energized wire. Working under an energized line was not necessary for the Decedent and the crew to perform the alignment readings. In fact, about 99% of the time the crew performed the readings under a de-energized wire, and there was no advantage in terms of electrical engineering practices to taking readings under an energized line versus a de-energized line. Thus, under the circumstances of this case, the Right of Refusal was used to suggest a reasonable alternative, *"besides quitting or refusing to perform the task in an unsafe way," see Fashauer,* 57 F.3d. at 1280 (emphasis added), thereby raising the issue of contributory negligence, not assumption of the risk.

*Collins,* 187 Md.App. at 313, 978 A.2d at 833 (first emphasis added). The intermediate appellate court concluded that Am-

---

**18.** The Court of Special Appeals distinguished the instant case from *Taylor v. Burlington N. R.R. Co.,* 787 F.2d 1309, 1316–17 (9th Cir.1986). In *Taylor,* the defendant could not introduce evidence that the employee could "bid off" his assigned section crew in order to avoid harassment by a fellow employee, as evidence of contributory negligence because that was really evidence of "assumption of the risk in the guise of contributory negligence." *Taylor,* 787 F.2d at 1316. The intermediate appellate court and Respondent distinguish the *Taylor* case by asserting that Mr. Collins acted wholly according to his own discretion under no compulsion, or sense of compulsion, from his employer. We do not agree that the instant case is so readily distinguishable because a reasonable trier of fact could find that Mr. Collins went on the roof of the Cat Car to tie down the pantograph because he thought that was his job and the risk was relatively ordinary given that he worked with electrified equipment on a routine basis.

trak did not offer the evidence of the policy for the purpose of supporting a forbidden defense. In our view, however, it is not purpose, but the impact of the evidence and argument of counsel on the fact finder that was and is at issue.[19] *See Jenkins v. Union Pac. R. Co.*, 22 F.3d 206, 212 (9th Cir.1994) (noting "[i]t is the evidence itself, not the defendant's characterization of it, that drives the analysis"). The intermediate appellate court agreed with Respondent that evidence of the Decedent's decision that the work could be completed safely under energized wires demonstrated contributory negligence because it showed that safer alternatives, besides quitting, were available to Mr. Collins, and that he acted unreasonably in not pursing them. To the contrary, the jury could have found that the same evidence was suggestive of Mr. Collins's knowing acceptance of a danger that relieved Amtrak of its duty, thereby appealing to assumption of the risk. *See Vandaveer v. Norfolk & W.R. Co.*, 78 Ill.App.2d 186, 222 N.E.2d 897 (1966) (ruling that evidence of an employee's ability to request another job, could have led a jury to infer that the employee assumed the risks associated with her current job and so an instruction was not improper). It is the potential impact on the jury, and not the proffered, or subsequently divined, purpose of the evidence that should govern whether a cautionary instruction is given.

Respondent's argument and the Court of Special Appeals's analysis are not persuasive because both fashion an under inclusive net to catch the instances where an assumption of the risk instruction is needed. Testimony solicited by Respondent from Mr. Nangle immediately after he summarized the Right

---

**19.** For example, in it's opening statement, Amtrak's counsel stated, "[T]he one person who would have and could have totally avoided this tragedy is Robert S. Collins ... It's not rocket science. Had Mr. Collins followed that procedure [tying down a latched de-energized pantograph], he would be alive today." Furthermore, in closing argument, Amtrak's counsel stated "Amtrak did not cause this accident ... surely you must believe that Mr. Collins was the main cause because he had every opportunity to extricate himself from the situation ... this was Mr. Collins shortcutting the job ... nobody wanted him to be up there."

of Refusal policy, focused on the Decedent's knowledge of policy, the extent of the safety briefing just prior to executing the assignment, and the "decision of the crew" to do the job under energized wire. The juxtaposition of the evidence of the 'opt-out' policy with the repeated testimony related to Mr. Collins's knowledge and experience in his particular line of work evokes elements of the assumption of the risk defense and not careless deviation from the standard of care.

The Court of Special Appeals's consideration of the Right of Refusal Policy and that court's conclusion that it could not have raised an impermissible inference of assumption of the risk is also inconsistent with its holding in a similar case, *CSX Transp., Inc. v. Richard Bickerstaff, et al.,* 187 Md.App. 187, 978 A.2d 760 (2009), in which a cautionary instruction was given and upheld on appeal.[20] In *Bickerstaff,* the Court of Special Appeals identified evidence presented at trial by the appellant employer that supported the trial judge's decision to give a cautionary instruction, namely "making choices to work at a particular rail yard, to mount and dismount moving equipment at a particular speed, [and] to take on a job involving more walking. . . ." The court concluded:

> The evidence adduced and argument presented concerning appellees' *choice of work or work site* thus support the inference that appellees voluntarily and knowingly accepted the dangers inherent in working for appellant when they performed their jobs. Such evidence and argument increased the risk that, in the absence of an instruction, the jury would improperly infer that appellees had assumed the risk in performing their work. Therefore, the subject jury charge adequately, and quite appropriately, distinguished between conduct constituting contributory negligence and conduct constituting assumption of risk. Accordingly, the

---

**20.** The intermediate appellate court's opinion in *Collins,* 187 Md.App. 295, 978 A.2d 822 (2009) was filed on August 27, 2009. That court's opinion in *CSX Transp., Inc. v. Richard Bickerstaff, et al.,* 187 Md.App. 187, 978 A.2d 760 (2009) was filed on August 26, 2009.

trial court did not err in giving a jury instruction on assumption of risk.

*Bickerstaff,* 187 Md.App. at 228, 978 A.2d at 784 (emphasis added). In the instant case, the Court of Special Appeals went beyond the evidence of the Right of Refusal policy to divine a purpose for which that evidence was offered and then to declare that purpose to be wholly in alignment with the railroad management's proffered reason for offering the evidence, namely to bolster a contributory negligence defense. The intermediate appellate court was satisfied in *Bickerstaff,* however, that evidence of choice of work site, analogous to the choice to work under an energized line despite recourse to the Right of Refusal Policy, was sufficient to warrant a clarifying, cautionary instruction. The Court of Special Appeals offered no persuasive reason in the instant case to distinguish its conclusion here from the one reached in *Bickerstaff.*

In the present case, the Court of Special Appeals also held that the evidence presented at trial regarding the reasons and presumptions about why decedent went onto the roof of the Cat Car, "tended to show that the Decedent departed from the standard of care and acted unreasonably under the circumstances, thus implicating the defense of contributory negligence and not assumption of the risk." *Collins,* 187 Md.App. at 315, 978 A.2d at 834 (citation omitted). In its closing statement to the jury, Amtrak highlighted Mr. Collins's knowledge of the dangers of the energized catenary system and his choice to mount the roof to tie down the pantograph. This argument, however, is consistent with the theory of assumption of risk.

In light of the conflicting evidence, it is unclear whether the Decedent was acting with the discretion that is central to the intermediate appellate court's reasoning and conclusion that assumption of the risk was not implicated. It is unknown exactly why Collins went on the roof, but physical evidence suggests he was in a position to stomp on the car roof thereby alerting the operator that he was tying-down the pantograph. The jury necessarily was confronted with conflicting evidence on precisely why the power remained on in this particular

circumstance, especially in light of repeated testimony that this kind of routine maintenance was performed under a de-energized line 99% of the time. Petitioner elicited testimony at trial tending to cast Amtrak as directing the crew explicitly, through a "conscious decision," to work under an energized line. Respondent, however, contends that it was the "crew's decision" to do the alignment reading under energized wire. One of the crew members, George Breader, testified that it was the crew foreman, Thomas Boone, who made the decision to do the reading under an energized line, and the crew agreed with that decision. At trial, an Amtrak official testified that an advantage to keeping the power on was that "when you remove power, trains won't run on certain areas." One of the crew members also testified that "[t]he advantage [to keeping the power on] is that the less people that have to be involved[,] . . . the less time that it requires." A reasonable jury could have inferred from this evidence that Amtrak directed Mr. Collins to 'accept a dangerous condition' of employment and that there was a benefit to the company in leaving the power on during the assignment.

According to the Tenth Circuit, "when the evidence could support either contributory negligence or assumption of the risk, instructions which only define contributory negligence are not sufficient to prevent the jury from applying assumption of the risk." *Sauer v. Burlington Northern R.R. Co.,* 106 F.3d 1490, 1493 (10th Cir.1996) (involving a FELA case where the instruction did address assumption of the risk and its inapplicability, albeit without mentioning the defense by name); *see e.g., Norfolk S. Ry. Co. v. Thomas,* 258 Va. 516, 522 S.E.2d 620 (1999) (noting that the same evidence may be relevant to both defenses). Here, Amtrak's theory of the case was that Mr. Collins elected to encounter the known risks of working in the vicinity of an energized wire. The jury could have concluded that Mr. Collins was carrying out continuing orders from Amtrak to tie down the pantograph as a matter of course. This interpretation of the evidence could have led to a finding of contributory negligence or assumption of risk.

## 2. Evidence of Custom Implicates Assumption of Risk

The Court of Special Appeals concluded, "it is clear that the evidence adduced does not show that the Decedent impliedly consented to 'perform[ ] a task in the manner which [Amtrak] directed.'" *Collins*, 187 Md.App. at 313, 978 A.2d at 833 (quoting *Fashauer*, 57 F.3d at 1279–80). In our view, it is not clear that the evidence only permitted one inference, which in the intermediate appellate court's opinion, would be the inference that Decedent acted under a 'general' order implicating only contributory negligence and not assumption of the risk. The jury may have reasonably inferred that the custom of tying-down the pantograph amounted to or derived from the existence of a direct order. In either case, it was a determination properly made by the jury and requiring full disclosure of the difference between contributory negligence and assumption of the risk.

Although neither party produced evidence of an explicit order to mount the Cat Car and tie down the pantograph, that was precisely what was customarily done when an alignment job was completed. Tying down the pantograph was the universally understood custom among members of the D–126 crew and it was known to Amtrak officials who did not definitively stop the practice. At trial, Amtrak's attorney asked Gerard Nangle:

> Did anyone that night, just so we are clear and the jurors, did you have any information that any crew member—either foreman, Mr. Boone, operator, Mr. Breader, or Mr. Backer, who I think maybe was not there at the time, he was doing other things—do you have any information that any crew member ordered Mr. Collins to go up top and somehow get close to the pantograph, for any reason?

Mr. Nangle answered, "No, no one, to our knowledge, gave instruction for him to go up." Thomas Boone, the crew foreman, however, offered contradictory testimony that there was a general instruction to always tie down the pantograph.

> [COLLINS'S COUNSEL]: You were told by Mr. Fora, the Assistant Division Engineer, to tie down the pantograph

even though it completely was without any history of failure, correct?

Mr. Boone: Correct.

[COLLINS'S COUNSEL]: Had you ever seen anything in writing about the tying-down of the pantograph?

Mr. Boone: (No audible response.)

[COLLINS'S COUNSEL]: Had you ever been given any detailed instructions about tying-down the pantograph?

Mr. Boone: Just to tie them down.

[COLLINS'S COUNSEL]: And that was direction from Mr. Foura to tie it down under all circumstances, correct?

Mr. Boone: Correct.

Further, Mr. Boone testified that he did not know whether the rule applied when the wires were energized or de-energized. Later at trial, Walter Foura, a Senior Project Officer in the Mid–Atlantic Division testified that he verbally communicated to foremen and supervisors to pass down to their subordinates the rule that the pantograph was to be tied down, but only under a de-energized line. In response to a question about why none of Amtrak's ground crews seemed to know about this caveat to the rule, that it be tied down under de-energized lines, Mr. Foura said that it was the responsibility of the foreman and supervisors to disseminate the information. Then, Mr. Foura testified about a 2004 memo written by upper level management explicitly stating that the pantograph was never to be tied down under any circumstance. Evidence was also adduced at trial that the crews tied down the pantograph routinely because a latch on the Cat Car which should have functioned to keep the pantograph secured to the roof of the vehicle did not function at the time of Decedent's fatal injury, and had never functioned properly. Thus, the evidence on this subject was contradictory.

It is conceivable, in light of this evidence, that the jury may have inferred that Collins was following his employer's direction that the pantograph should be tied down at the end of an alignment reading job in accordance with his understanding of his position on the crew and the customary procedure.

This inference would invoke the "direct order" that, under *Fashauer*, warrants a cautionary instruction. This evidence about the tie down procedure, along with evidence of the safety meeting prior to the job and the investigative report finding that the Decedent acted without orders to mount the roof and approach live wire, directs attention to Decedent's knowledge, choice, and awareness of risk. The jury may have dismissed Amtrak's characterization and testimony about the custom and rules relating to tying-down the pantograph. Because we cannot know whether the jury properly considered only those aspects of the evidence relative to carelessness, we cannot be confident that the verdict reflects the jury's conclusion that the sole cause of the Decedent's injury was his own carelessness or that it was his assumption of the risk. *See Jenkins*, 22 F.3d 206, 211–12 (9th Cir.1994) (noting the assumption of the risk instruction is warranted if the evidence can prove either contributory negligence or assumption of the risk).

*Hamrock v. Consol. Rail Corp.*, 151 Ill.App.3d 55, 103 Ill.Dec. 736, 501 N.E.2d 1274 (1986) illustrates how an appellate court in Illinois resolved a case where it was unclear if the employee was acting under direct or general orders. In *Hamrock*, the conductor "informed" Hamrock's crew about the movements that would need to be made to align the train cars in the desired configuration, and each member was to decide how to execute his part of the job. *Hamrock*, 103 Ill.Dec. 736, 501 N.E.2d at 1276. The court said:

> Because there was support in the record for plaintiff's theory that he merely performed a dangerous job under orders and in the customary manner without safe alternatives available to him, there was evidence from which the jury could have reasonably inferred that plaintiff assumed the risk and a cautionary instruction should have been given.

*Hamrock*, 103 Ill.Dec. 736, 501 N.E.2d at 1280. In *Hamrock*, the court determined "defendant's attempt to show that the sole cause of plaintiff's injury was his own carelessness by emphasizing plaintiff's years as a brakeman, his familiarity

with the coupling maneuver, and his knowledge of the condition of the yard underscore[d] the need for a cautionary instruction ...." *Hamrock*, 103 Ill.Dec. 736, 501 N.E.2d at 1280. Amtrak presented a similar case here—evidence was adduced regarding Collins's training, knowledge of the procedures, and awareness of the dangerousness of working under energized lines.

The case is instructive because Mr. Hamrock, like Mr. Collins, "was familiar with the railroad's safety rules but stated that he and other train men *customarily* rode moving cars and manipulated the angle cock with their feet." *Hamrock*, 103 Ill.Dec. 736, 501 N.E.2d at 1276 (emphasis added). This practice, like tying-down the pantographs, was not in accordance with the formal rules set by the employer. The court in *Hamrock* also stated that just because an employee violates a safety rule, that does not establish that the employee was the sole cause of his injuries "particularly in light of evidence that the rules were seldom utilized or were nullified by custom." *Hamrock*, 103 Ill.Dec. 736, 501 N.E.2d at 1280. Because the jury could have made the inference that Collins was on the roof of the Cat Car, to do what he understood his job to be, even under dangerous conditions, the cautionary instruction about assumption of the risk should have been given.

### 3. Petitioner was Harmed by the Omission of a Cautionary Instruction

 Respondent contended at oral argument that Petitioner's question before this Court is moot because the jury answered "No" to "Question 1" on the verdict sheet, asserting, as we understand it, that because the jury found that Amtrak was not negligent it necessarily did not perform any analysis of proposed, or implied affirmative defenses.[21] Respondent's

---

**21.** Question No. 1 of the verdict sheet read as follows:

1. Do you find the Defendant, National Railroad Passenger Corporation (Amtrak) was negligent with regard to the incident of February

argument fails to recognize that the structure of "Question 1" on the verdict sheet compounded the trial court's error in not instructing the jury on the inapplicability of the assumption of the risk defense. In answering "No" to the first question, the jury may have concluded that the employee had assumed the risks of his employment, thereby negating Amtrak's duty entirely, or the jury could have found that Amtrak was negligent but did not cause Mr. Collins's fatal injury because, as Amtrak characterized it, he was "solely responsible" for his injury.

A prima facie case of negligence under FELA is based on the common law elements in accordance with federal law: duty, breach, foreseeability, and causation.[22, 23] *Szekeres v. CSX Transp., Inc.,* 617 F.3d 424 (6th Cir.2010) (citing *Adams v. CSX Transp., Inc.,* 899 F.2d 536, 539 (6th Cir.1990) (holding that a FELA plaintiff asserting a cause of negligence against his or her employer must "prove the traditional common law elements of negligence: duty, breach, foreseeability,

17, 2005 and that negligence caused or contributed, in whole or in part, to the injuries and death of Robert Collins?
Answer this Question 'Yes' or 'No'.
If the answer to this question is 'Yes', proceed to Question No. 2.
If the answer to this question is 'No', you may inform the Court that you have reached a verdict and should answer no further questions.

22. The form of the instructions and the verdict sheet are to be determined in accordance with state procedural law. *See Pryor v. Amtrak,* 301 Ill.App.3d 628, 633, 234 Ill.Dec. 897, 703 N.E.2d 997 (1998) (stating "[w]hile the substantive law contained in jury instructions in an FELA case is federal and should not vary whether the case is tried in state or federal court, the instructional format is procedural and is a matter for the state to regulate.").

23. In the instant case, it is the causation element that may have engendered improper inferences by the jury on assumption of risk because Amtrak continually argued that Mr. Collins was the sole cause of his fatal injuries. Framing the defense as such, in our view, casts the evidence in the light of assumption of risk and not contributory negligence. In FELA cases, a contributory negligence defense may be used to mitigate damages, but here, Amtrak offered evidence that tended to completely eliminate its liability, or to 'bar recovery,' which is an approach that has been effectively eliminated after the passage of the 1939 Amendment abrogating the assumption of risk defense.

and causation")). Ordinarily the general concept of negligence and the instruction on causation, distinct elements in a negligence claim, are explained and represented in separate questions on the verdict sheet. Vol. ♦—Ch. 9, *Modern Federal Jury Instructions—Civil,* ¶ 6.2–6.4 (Matthew Bender 2010) (illustrating a model verdict sheet in which the elements of negligence and causation are addressed separately and in that order); *see also* 9–49 BENDER'S FEDERAL PRACTICE FORMS Form No. 49:34 (2010) (providing a sample verdict sheet in which the question of negligence preceded the question of causation); *see* MARYLAND CIVIL PATTERN JURY INSTRUCTIONS §§ 19–1, 19–10 (Maryland Bar Association, 4th ed.2009 Supp.) (defining the general concept of negligence and causation elements respectively).

The issue raised in the petition for certiorari is not moot. In the present case, negligence and causation were combined into the first question on the verdict sheet. Here, the evidence presented focused on knowledge of danger and voluntary encounter of risks. In addition, the lack of a cautionary instruction, compounded by a verdict sheet that did not separate negligence from causation, suggests that the jury may have impermissibly concluded that Mr. Collins assumed the risk of his injuries thereby negating Amtrak's duty.

■■■ We look to the jury instructions that were given at trial to determine whether they are relevant in light of the issues raised and the evidence presented.[24] Jurors are presumed to have followed the instructions provided to them by the court, "[o]ur legal system necessarily proceeds upon" that presumption. *State v. Moulden,* 292 Md. 666, 678, 441 A.2d 699, 705 (1982) (citing *Blanchfield v. Dennis,* 292 Md. 319, 438 A.2d 1330 (1982)). This presumption directs our attention to the substance of the instruction, which is critically important

---

**24.** Because Petitioner did not raise an issue as to the instruction as given, she only objected at trial to the denial of her proposed jury instruction, we only review the language of the instruction as given in so far as its language was likely to contribute to impermissible consideration by the jury.

in determining if the jury may have relied upon the defense that Mr. Collins assumed the risk of his injury.

After discussing the elements to be considered in determining if Amtrak was negligent, the trial judge instructed the jury to presume that Mr. Collins had acted with due care, i.e. that he had acted reasonably, because he was deceased and could not present testimony on his own behalf. The jury was then instructed about the law with regard to contributory negligence:

> In determining whether the Plaintiff discharged the duty of ordinary care imposed upon him, it is proper for you to take into consideration his familiarity with the place in which he customarily worked and his familiarity with the nature of the work which was customarily performed in that place.
>
> * * *
>
> In this case, the Defendant contends that Mr. Collins'[s] injuries and death were due to Plaintiffs own negligence. This is referred to as contributory negligence. If you find that Mr. Collins was negligent and that Amtrak was not, then the Plaintiff is prevented from recovering damages under the Federal Employer's (sic) Liability Act.
>
> If you find that the negligence on the part of Mr. Collins and on the part of the Defendant each played a role in causing Mr. Collins'[s] injuries and death, then Mr. Collins'[s] negligence is referred to as contributory negligence and he is not prevented from recovering damages. Rather, Mr. Collins'[s] damages are reduced in proportion to the amount of contributory negligence attributable to him and I will explain that in some more detail very shortly.
>
> * * *
>
> *If you find there was both a safe way and a dangerous way by which the Plaintiff could have performed his work and he knew or in the exercise of ordinary care should have known of the safe way of doing such work and voluntarily chose the dangerous way and was injured thereby, and if you find that such choice constituted negligence on the Plaintiff's part and that such negligence was the sole cause*

of the alleged injury, if any, then the Plaintiff cannot recover and it would be your duty to return a verdict for the Defendant.[25]

(Emphasis added.)

While the instruction given adequately covered the law applicable to negligence and contributory negligence, it failed as a matter of law because, in substance, it did not address all of the evidence and the reasonable inferences to be drawn from the evidence. Assumption of the risk is a "distinctive kind of contributory negligence," and so a jury should be instructed in a way that removes this theory from consideration. *See generally* PROSSER AND KEETON ON TORTS, § 68, 495. Because the instruction, particularly the language emphasized above, invokes a voluntary choice, the jury should have also been instructed to consider evidence of Decedent's carelessness independently of Decedent's knowing encounter with a danger in the course of his employment. As instructed, the elements of assumption of the risk were entangled with the elements of negligence and contributory negligence. "In working out the distinction, the courts have arrived at the conclusion that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct, however unwilling or protesting the plaintiff may be." *Koshorek,* 318 F.2d at 367; *see Johnson v. Erie R.R. Co.,* 236 F.2d 352, 355 (2d Cir.1956) (holding that only instructing on contributory negligence allowed for the jury to consider assumption of the risk in rendering its verdict).

As a result of the instructions given, it is uncertain whether the jury found Amtrak to be not negligent or whether the jury's response to "Question 1" meant that the jury found

---

**25.** While reproducing the charge in pertinent part, we are cognizant that our consideration must be made in light of the instruction in its entirety, meaning, we do not take phrases out of context. *Greenbelt Coop. Publ'g Ass'n v. Bresler,* 253 Md. 324, 364, 252 A.2d 755, 778 (1969), *rev'd on other grounds,* 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970).

Amtrak to be negligent, but its negligence played no role in causing Collins's injuries. This uncertainty is pivotal because the Circuit Court's failure to instruct on the inapplicability of assumption of the risk allowed the jurors, on the issue of causation, to consider that Collins knew of the risk of working under energized wires, and, therefore, assumed the consequences of his voluntary choice to encounter that risk. The jury, in merely considering the element of causation, may have been misled by the evidence tending to show that Decedent assumed the risk of his own injuries.

## IV.

In response to Amtrak's cross-petition in the instant case, we hold that the intermediate appellate court did not err in declining to reach the issue presented in Amtrak's conditional cross-appeal, which requested the Court of Special Appeals to review the trial court's denial of Amtrak's renewed motion for judgment at the close of all the evidence. The intermediate appellate court affirmed the judgment of the trial court ruling that, in light of the evidence, Collins's proposed instruction was unnecessary. Hence, Amtrak won the appeal. Thus, the issue presented in Amtrak's cross-appeal was rendered moot by the intermediate appellate court's decision to affirm the judgment of the trial court. *See Hagerstown Reproductive Health Services v. Fritz*, 295 Md. 268, 272, 454 A.2d 846, 848 (1983) (holding that courts rarely review the merits of a moot case); *cf. City of Frederick v. Pickett*, 392 Md. 411, 424, 897 A.2d 228, 235 (2006) (noting that an appellate court "could affirm ... 'on any ground adequately shown by the record, whether or not relied upon by the trial court'") (quoting *Berman v. Karvounis*, 308 Md. 259, 263, 518 A.2d 726, 728 (1987)). Accordingly, we hold that the Court of Special Appeals did not err in declining to address, on the merits, the issue raised in Respondent's conditional cross-appeal.

The effect of our judgment in this case is a remand for a new trial in conformance with this opinion. Because we hold that the trial judge erred in not giving Collins's requested jury

instruction, we need not determine whether the trial court correctly denied Amtrak's motion for judgment.

## V.

In this case, the evidence tended to show Decedent's knowledgeable, voluntary encounter with the energized equipment aboard the Cat Car, a dangerous condition of his work environment, while executing customary duties as a member of the D–126 crew. Consequently, the jury may have relieved Amtrak of liability by finding that the Decedent was the sole cause of his fatal injury because he assumed the risks involved in performing a dangerous job. Therefore, the trial judge erred in failing to give a cautionary instruction to clarify that only negligence and contributory negligence were applicable to the case. Petitioner was prejudiced because a finding of contributory negligence would have resulted in apportionment of damages, but a finding of contributory negligence disguised as assumption of the risk would result in a complete bar to recovery.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL. RESPONDENT TO PAY THE COSTS.**

BATTAGLIA, J., dissents.

BATTAGLIA, J., dissenting.

For the reasons presented by the Court of Special Appeals, I would affirm the judgment. Our colleagues on the intermediate appellate court properly determined that none of the evidence presented to the jury expressly or implicitly inserted assumption of risk into the trial. Based on the facts of this case, the evidence regarding the Right of Refusal and the decedent's choice to mount the roof of the train car suggested reasonable alternatives, " 'besides quitting or refusing to perform the task in an unsafe way,' " *Collins v. Nat'l R.R. Passenger Corp.*, 187 Md.App. 295, 313, 315, 978 A.2d 822, 833,

834 (2009), quoting *Fashauer v. N.J. Transit Rail Operations, Inc.,* 57 F.3d 1269, 1280 (3d Cir.1995), such that only the defense of contributory negligence was in issue.